IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **AURELIO TARAZONA CARVAJAL, EDUAR HURTADO GARCIA, ELKIN HUMBERTO GÓMEZ PINTO, FREDY ALEXANDER HERRERA PICO, JAIRO ANDRÉS ARDILA PEÑA, JORGE ELIECER DIAZ GALVIS, WILSON FABIAN PEÑA CASTILLO, JUAN DAVID GARCÍA RODRIGUEZ** *Plaintiffs* <br><br> **v.** <br><br> **MIJELUM, L.L.C.** | Civil Action No. _3:23-cv-245-RFC |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME **AURELIO TARAZONA CARVAJAL, EDUAR HURTADO GARCIA, ELKIN HUMBERTO GÓMEZ PINTO, FREDY ALEXANDER HERRERA PICO, JAIRO ANDRÉS ARDILA PEÑA, JORGE ELIECER DIAZ GALVIS, WILSON FABIAN PEÑA CASTILLO, AND JUAN DAVID GARCÍA RODRIGUEZ**, individually and on behalf of similarly situated present and former employees, hereinafter referred to as "Plaintiffs," bringing this cause of action under the Fair Labor Standards Act 29 U.S.C. § 203 et. seq. against Defendants **MIJELUM, L.L.C.**, **LUIS MUCHARRAZ**, and **LEON MUCHARRAZ** hereinafter referred to as "Defendants." Each of the above-named Plaintiffs consents to be a part of this FLSA claim and litigation.  For cause of action, Plaintiffs respectfully show unto the Court the

1

following:

# I.
# PARTIES

1. Plaintiff **AURELIO TARAZONA CARVAJAL** who was employed by Defendant Mijelum and performed work within the Western District of Texas El Paso Division during the time relevant to this suit.

2. Plaintiff **EDUAR HURTADO GARCIA** who was employed by Defendant Mijelum and performed work within the Western District of Texas El Paso Division during the time relevant to this suit.

3. Plaintiff **ELKIN HUMBERTO GÓMEZ PINTO** who was employed by Defendant Mijelum and performed work within the Western District of Texas El Paso Division during the time relevant to this suit.

4. Plaintiff **FREDY ALEXANDER HERRERA PICO** who was employed by Defendant Mijelum and performed work within the Western District of Texas El Paso Division during the time relevant to this suit.

5. Plaintiff **JAIRO ANDRÉS ARDILA PEÑA** who was employed by Defendant Mijelum and performed work within the Western District of Texas El Paso Division during the time relevant to this suit.

6. Plaintiff **JORGE ELIECER DIAZ GALVIS** who was employed by Defendant Mijelum and performed work within the Western District of Texas El Paso Division during the time relevant to this suit.

7. Plaintiff **WILSON FABIAN PEÑA CASTILLO** who was employed by Defendant Mijelum and performed work within the Western District of Texas El Paso Division during the time relevant to this suit.

8. Plaintiff **JUAN DAVID GARCÍA RODRIGUEZ** who was employed by Defendant Mijelum and performed work within the Western District of Texas El Paso Division during the time relevant to this suit.

9. Defendant **MIJELUM, L.L.C.** is a Texas LLC. It has previously been served and appeared in this matter.

10. Defendant **LUIS MUCHARRAZ** is an individual who may be served with process at 3001 W HWY 90 Lot 5, Alpine, TX 79830 or wherever he may be found.

11. Defendant **LEON MUCHARRAZ** is an individual who may be served with process at 908 Canyon drive, Midland, TX 79703 or wherever he may be found.

## II.
## JURISDICTION AND VENUE

12. This Court has jurisdiction over the claims because Plaintiff has asserted a claim arising under federal law, the Fair Labor Standards Act.

13. Venue is proper in the Western District of Texas, El Paso Division because the events forming the basis of the suit occurred in whole or in part within the Western District of Texas El Paso Division.

## III.
## MISNOMER/MISIDENTIFICATION

14. In the event any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer" and/or such parties

3

are/were "alter egos" of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## RESPONDEAT SUPERIOR

15. Employees involved in this cause of action were, at all times described herein, employees of Defendant Mijelum and were at all times acting in the course and scope of that employment. Accordingly, Defendants are liable for such conduct under the doctrine of *Respondeat Superior*.

## V.
## FACTUAL BACKGROUND

16. Plaintiffs and other unnamed present and/or former employees of Defendant Mijelum were/are required to work in excess of 40 hours per week but were not paid all wages and overtime pay as required by law. Defendant Mijelum paid Plaintiffs a flat weekly rate regardless of hours worked.

17. Plaintiffs and similarly situated employees were employed as Highway Maintenance Workers by Defendant Mijelum. Plaintiffs performed manual labor in 2021 and 2022. Despite the fact that Mijelum L.L.C. represented in documentation submitted to the Texas Workforce Commission that highway workers such as Plaintiffs would be paid overtime, they were instead paid a flat weekly amount that was substantially lower than what they were owed.

18.     Plaintiff's worked 6:30 AM to 8:30 PM each day, a 14 hour work day 6-7 days per week.  Plaintiffs worked during the period of May 2021 to December 21, 2021 and April 4, 2022, to September 23, 2023.

19.     Despite the long work days, Plaintiffs were paid a flat weekly rate of $600 per week. Plaintiffs were paid a flat weekly rate despite the fact that Mijelum L.L.C. represented that highway workers such as Plaintiffs' would be paid overtime when it submitted documentation for temporary non-agricultural positions to the Texas Workforce Commission.

20.     At their pay rate of $18.53 per hour, Plaintiffs should have been paid $27.795 per hour of overtime work.  Additionally, Plaintiffs regularly worked 6 and even 7 days a week.  In general, based on a 6 day work week, each Plaintiff should have been paid $1,964.18 per week, rather than the flat $600 per week that they were actually paid.

21.     The Defendants' failure to pay overtime pay violates the Fair Labor Standards Act (FLSA).  Therefore, Plaintiffs are entitled to recover pay for each hour worked in excess of 40 hours during any one work week at the rate of one and one half times his hourly rate.  Further, Plaintiffs would show that the FLSA violations were willful. Therefore, Plaintiffs are entitled to three years of accrued, unpaid overtime pay.

22.     Defendants Leon Mucharraz and Luis Mucharraz were individual corporate officers who were responsible for determining the rate and method of compensation of Plaintiffs, which were improper in this case, and are therefore liable as employers under the FLSA.

5

23.     Plaintiffs are also entitled to liquidated damages in an amount equal to the overtime benefits due because of the willful nature of the Defendants' failure to take reasonable steps to comply with the FLSA.  Plaintiffs are also entitled to attorneys' fees.

24.     Each Plaintiff incurred losses as follows:

**AURELIO TARAZONA CARVAJAL** –

**2021 LOSSES**:

- Plaintiff worked for Defendant Mijelum from May 13, 2021 to December 21, 2021.
    - From May 13, 2021 to July 11, 2021, a period of 8 weeks and 5 days, he was paid $4,114.00.
        - If he had been properly paid he would have made $1,964.18 per week, or a total of $17,108.
        - From May 13, 2021 to July 11, 2021, he was underpaid by $12,994.00.
    - From July 12, 2021 to December 21, 2021, a period of 23 weeks and 2 days, he was paid $13,971.00.
        - If he had been properly paid he would have made $1,964.18 per week, or a total of $45,735.93 during that period.
        - From July 12, 2021, to December 21, 2021, he was under paid by $31,764.93.
    - In total for 2021, Plaintiff was underpaid by $44,758.93.

**2022 LOSSES**:

- Plaintiff worked for Defendant Mijelum from April 4, 2022, to September 23, 2022, a period of 24 weeks and 4 days.
    - From April 4, 2022 to September 23, 2022, Plaintiff was paid $15,242.60.
        - If he had been properly paid he would have made $1,964.18 per week for a total of $48,261.86.
    - In total for 2022, Plaintiff was underpaid by $33,019.26.

**TOTAL LOSSES** - **$77,778.16**

**EDUAR HURTADO GARCIA -**

**2022 LOSSES**

6

- Plaintiff worked for Defendant Mijelum from May 12, 2022 to September 23, 2022 a period of 19 weeks and 1 day.
    - From May 12, 2022 to September 23, 2022, he was paid $11,985.20.
        - He should have been paid $1,964.18 per week for a total of $37,598.33.
    - In total for 2022, Plaintiff was underpaid by $25,613.13.

## TOTAL LOSSES - $25,613.13

## ELKIN HUMBERTO GÓMEZ PINTO -

## 2022 LOSSES

- Plaintiff worked for Defendant Mijelum from May 12, 2022 to September 23, 2022 a period of 19 weeks and 1 day.
    - From May 12, 2022 to September 23, 2022, he was paid $11,985.20.
        - He should have been paid $1,964.18 per week for a total of $37,598.33.
    - In total for 2022, Plaintiff was underpaid by $25,613.13.

## TOTAL LOSSES - $25,613.13

## FREDY ALEXANDER HERRERA PICO -
## 2021 LOSSES

- Plaintiff worked for Defendant Mijelum from July 11, 2021 to December 21, 2021.
    - From July 11, 2021 to December 21, 2021, a period of 23 weeks and 2 days, he was paid $13,971.00.
        - If he had been properly paid he would have made $1,964.18 per week, or a total of $45,735.93.
    - In total for 2021, he was underpaid by $31,764.93.

## 2022 LOSSES
- Plaintiff worked for Defendant Mijelum from April 4, 2022, to September 23, 2022, a period of 24 weeks and 4 days.
    - From April 4, 2022 to September 23, 2022, Plaintiff was paid $15,242.60.
        - If he had been properly paid he would have made $1,964.18 per week for a total of $48,261.86.
    - In total for 2022, Plaintiff was underpaid by $33,019.26.

**TOTAL LOSSES - $81,281.12.**

**JAIRO ANDRÉS ARDILA PEÑA -**

**2022 LOSSES**

- Plaintiff worked for Defendant Mijelum from April 4, 2022, to September 23, 2022, a period of 24 weeks and 4 days.
    - From April 4, 2022 to September 23, 2022, Plaintiff was paid $15,242.60.
        - If he had been properly paid he would have made $1,964.18 per week for a total of $48,261.86.
    - In total for 2022, Plaintiff was underpaid by $33,019.26.

**TOTAL LOSSES - $33,019.26**.

**JORGE ELIECER DIAZ GALVIS –**

**2022 LOSSES**

- Plaintiff worked for Defendant Mijelum from April 4, 2022, to September 23, 2022, a period of 24 weeks and 4 days.
    - From April 4, 2022 to September 23, 2022, Plaintiff was paid $15,242.60.
        - If he had been properly paid he would have made $1,964.18 per week for a total of $48,261.86.
    - In total for 2022, Plaintiff was underpaid by $33,019.26.

**TOTAL LOSSES - $33,019.26**.

**WILSON FABIAN PEÑA CASTILLO –**

**2021 LOSSES**

- Plaintiff worked for Defendant Mijelum from July 11, 2021 to December 21, 2021.
    - From July 11, 2021 to December 21, 2021, a period of 23 weeks and 2 days, he was paid $13,971.00.
        - If he had been properly paid he would have made $1,964.18 per week, or a total of $45,735.93.
    - In total for 2021, he was underpaid by $31,764.93.

**2022 LOSSES**

8

- Plaintiff worked for Defendant Mijelum from April 4, 2022, to September 23, 2022, a period of 24 weeks and 4 days.
    - From April 4, 2022 to September 23, 2022, Plaintiff was paid $15,242.60.
        - If he had been properly paid he would have made $1,964.18 per week for a total of $48,261.86.
    - In total for 2022, Plaintiff was underpaid by $33,019.26.

**TOTAL LOSSES - $64,784.19**

**JUAN DAVID GARCÍA RODRIGUEZ -**

**2021 LOSSES**

- Plaintiff worked for Defendant Mijelum from May 13, 2021 to December 21, 2021.
    - From May 13, 2021 to July 11, 2021, a period of 8 weeks and 5 days, he was paid $4,114.00.
        - If he had been properly paid he would have made $1,964.18 per week, or a total of $17,108.
        - From May 13, 2021 to July 11, 2021, he was underpaid by $12,994.00.
    - From July 12, 2021 to December 21, 2021, a period of 23 weeks and 2 days, he was paid $13,971.00.
        - If he had been properly paid he would have made $1,964.18 per week, or a total of $45,735.93 during that period.
        - From July 12, 2021, to December 21, 2021, he was under paid by $31,764.93.
    - In total for 2021, Plaintiff was underpaid by $44,758.93.

**TOTAL LOSSES - $44,758.93**

25. Moreover, to the extent any present or former employee suffers retaliation, Plaintiffs intends to assert a claim for retaliation under the FLSA.

## VI.
## CAUSES OF ACTION

**Failure to Pay Wages in Accordance with the Fair Labor Standards Act**

26. The FLSA was passed by Congress in 1938 in an attempt to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-

9

being of workers. To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he is employed." Walling v. Helmerich & Payne, 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207 (a)).

27. Defendants' failure to pay overtime and/or forcing Plaintiffs to work any off the clock hours violated the Fair Labor Standards Act of 1938 as currently amended and codified at 29 U.S.C. §201 *et seq*. (FLSA). Therefore, Plaintiffs are entitled to recover regular and/or overtime pay for each hour worked off the clock and/or in excess of 40 hours during any one work week at the rate of one and one half times their hourly rate.

28. Plaintiffs would show that the FLSA violations were willful and as such Plaintiffs are entitled to accrued, unpaid overtime pay. Plaintiffs are further entitled to liquidated damages in an amount equal to the unpaid overtime benefits due because of the willful nature of the Defendants' failure to take reasonable steps to comply with the FLSA. Plaintiffs are also entitled to recover mandatory attorneys' fees under the statute.

## VII.
## COVERAGE

29. At all material times, Defendants have acted directly or indirectly in the interest of an employer or joint employer with respect to Plaintiffs.

30. At all times hereinafter mentioned, Defendants have been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

10

31. At all times hereinafter mentioned, Defendant Mijelum has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

32. At all times hereinafter mentioned, Defendant Mijelum has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprises have employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprises have had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

33. At all times hereinafter mentioned, Plaintiffs were individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

34. Under federal law, the Fair Labor Standards Act (FLSA) imposes personal liability on corporate officers and directors for minimum wage and overtime violations under certain circumstances.

35. An "employer" for purposes of the FLSA includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. § 203(d).

36. Courts have interpreted this definition to include individuals who exercise significant operational control over corporate affairs, regardless of whether such individuals were directly responsible for the wage law violations.

37. Among the factors courts consider in determining whether to impose personal liability are whether the person at issue (1) has the power to hire and fire employees, (2) supervises and controls employee work schedules or conditions of employment, (3) determines the rate and method of compensation and/or (4) maintains employment records. *See Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984). "Consistent with its broad, remedial purposes, the FLSA defines the term 'employer' expansively—the statute places no express limitation on the word's meaning, stating only that it 'includes any person acting directly or indirectly in the interest of an employer in relation to an employee.' " *Avila v. SLSCO, Ltd.*, No. 3:18-CV-00426, 2022 WL 784062, at *11 (S.D. Tex. Mar. 15, 2022).

38. Both individual Defendants, Luis Mucharraz and Leon Mucharraz, fall under this definition of "employer" under the FLSA and are subject to liability under the Act.

## VIII.
## ATTORNEY'S FEES

39. It was necessary for Plaintiffs to retain the services of the undersigned attorneys to prosecute this action. Plaintiffs are entitled to recover the reasonable and necessary attorney's fees, expert fees and court costs to prosecute this action as authorized under the FLSA. Therefore, Plaintiffs seek all reasonable and necessary attorney fees in this case which would include at least the following:

  a.  Preparation and trial of the claim, in an amount the jury deems reasonable;

  b.  Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

    c.      An appeal to the 5th Circuit Court of Appeals, in an amount the jury deems reasonable;

    d.      Making or responding to an Application for Writ of Certiorari to the Supreme Court of the United States, and attorneys' fees in the event that application for Writ of Certiorari is granted, in an amount the jury deems reasonable; and,

    e.      Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## IX.
## DAMAGES

40.    Plaintiffs sustained the following damages as a result of the actions and/or omissions of Defendants:

    a.      Overtime pay, time and one half pay, for all hours worked while employed by Defendants that were in excess of 40 hours per week and for all regular time and/or overtime hours worked "off the clock" during the business day, In addition, Plaintiffs are entitled to liquidated damages in a like amount as the underpaid amounts;

    b.      All reasonable and necessary attorneys' fees incurred by or on behalf of Plaintiffs;

    c.      All reasonable and necessary costs incurred in pursuit of this suit;

    d.      Expert fees as the Court deems appropriate;

    e.      Pre and Post judgment interest as allowed by law;

## X.
## JURY DEMAND

41.    Plaintiffs further demand a trial by jury. A jury fee has been tendered.

### CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein and that upon a final hearing hereof, a judgment be

rendered for Plaintiffs and against the Defendants for the actual damages set out above in an amount the jury deems reasonable under the circumstances, along with costs of court, pre-judgment interest, post-judgment interest, liquidated damages, and for such other and further relief to which Plaintiffs may be justly entitled.

        **Respectfully Submitted,**

        */s/ Alan Braun*
        **Adam Poncio**
        **State Bar No. 16109800**
        **aponcio@ponciolaw.com**
        **Alan Braun**
        **State Bar No. 24054488**
        **abraun@ponciolaw.com**

        **PONCIO LAW OFFICES**
        **A Professional Corporation**
        **5410 Fredericksburg Rd., Suite 109**
        **San Antonio, Texas 78229**
        **Telephone: (210) 212-7979**
        **Facsimile: (210) 212-5880**