IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| AURELIO TARAZONA CARVAJAL, EDUAR HURTADO GARCIA, ELKIN HUMBERTO GÓMEZ PINTO, FREDY ALEXANDER HERRERA PICO, JAIRO ANDRÉS ARDILA PEÑA, JORGE ELIECER DIAZ GALVIS, WILSON FABIAN PEÑA CASTILLO, JUAN DAVID GARCÍA RODRIGUEZ, | § § § § § § § § § | |
| *Plaintiffs*, | § | **EP-23-CV-00245-RFC** |
| | § | |
| **v.** | § | |
| | § | |
| **MIJELUM, L.L.C.,** | § | |
| *Defendant*. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendant Mijelum, L.L.C's "Motion for Summary Judgment" ("Defendant's Motion") (ECF No. 47), filed on February 27, 2025, and Plaintiffs' "Motion for Summary Judgment as to Mijelum's Counter-Claims and Affirmative Defenses and for Summary Judgment as to Plaintiffs' Claims for Violations of the FLSA" ("Plaintiffs' Motion") (ECF No. 62), filed on March 17, 2025. For the reasons set forth below, the Court **DENIES** Defendant's Motion. The Court **GRANTS** Plaintiffs' Motion in part and **DENIES** it in part.

## I.     BACKGROUND

Defendant is a company that works on highway maintenance. App. Ex. 3, at 7, ECF No. 53-3. Leon Mucharraz and Luis Mucharraz are co-owners of Defendant. App. Ex. 1, at 5:22–24, 7:8–11, 8:13–17, ECF No. 53-1; Pls.' Mot. Ex. 2, at 4:16–18, ECF No. 62-3. In 2021, Defendant filed an application for H-2B visas, seeking twelve highway maintenance workers to start work on April 1, 2021, and work until December 31, 2021. App Ex. 3, at 2. Among the workers Defendant

hired in 2021 were Plaintiffs Aurelio Tarazona Carvajal, Fredy Alexander Herrera Pico, Wilson Fabian Pena Castillo, and Juan David Garcia Rodriguez.  *See* App. Ex. 5, ECF No. 53-5; App. Ex. 6, ECF No. 53-6; App. Ex. 7, ECF No. 53-7; App. Ex. 43, ECF No. 53-43.  These Plaintiffs allege that they were not paid overtime as required by the Fair Labor Standards Act ("FLSA").  Specifically, they allege that they worked more than forty hours a week and were only paid a flat fee, usually between $400 and $700, at the end of each week.  App. Ex. 5, at 3–7; App. Ex. 6, at 2–3; App. Ex. 7, at 4–5; App. Ex. 43, at 6–8.

In 2022, Defendant rehired Plaintiffs Tarazona Carvajal, Herrera Pico, and Pena Castillo. *See* App. Ex. 5; App. Ex. 6; App. Ex. 7.  Plaintiff Garcia Rodriguez was not rehired, due to his complaints about work in 2021.  App. Ex. 43, at 8.  Defendant also hired Plaintiffs Eduar Hurtado Garcia, Elkin Humberto Gomez Pinto, Jairo Andres Ardila Pena, and Jorge Eliecer Diaz Galvis. *See* App. Ex. 14, ECF No. 53-14; App. Ex. 15, ECF No. 53-15; App. Ex. 16, ECF No. 53-16; App. Ex. 17, ECF No. 53-17.  Plaintiffs again complain that they were forced to work more than 40 hours a week and were paid a flat fee, usually between $500 to $700 a week.  App. Ex. 5, at 8–15; App. Ex. 6, at 4–6; App. Ex. 7, at 5–8; App. Ex. 14, at 2–3; App. Ex. 15, at 2–3; App. Ex. 16, at 4–5; App. Ex. 17, at 5–7.

Plaintiffs filed suit under the FLSA on June 27, 2023.  *See* Pls.' Original Compl., ECF No. 1.  They filed an amended complaint, maintaining the same FLSA claims against Defendant, on March 28, 2024.  *See* Pls.' First Am. Compl, ECF No. 22.  In its answer, Defendant asserted a counterclaim against Plaintiffs for conversion, arguing that Plaintiffs took possession of one of Defendant's vehicles and refused to return it.  Def.'s Answer, Defenses, Affirmative Defenses, & Counterclaim Pls.' First Am. Compl. ¶¶ 62–66, ECF No. 23.  Plaintiffs and Defendant have filed cross-motions for summary judgment.  Defendant seeks summary judgment on Plaintiffs' FLSA

claims, while Plaintiffs seek summary judgment on Defendant's affirmative defenses, counterclaim, and their own FLSA claims.  *See* Def.'s Mot., ECF No. 47; Pl.'s Mot., ECF No. 62.

## II.    STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material "if proof of its existence might affect the outcome of the case."  *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020).  "There exists a 'genuine dispute' about a material fact . . . when the evidence would allow a reasonable jury to return a verdict for the nonmovant."  *Id.*

A party seeking summary judgment bears the initial burden of proving the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant carries that burden, the burden shifts to the nonmovant to show that a genuine issue exists. *Id.* at 323–25.  The ultimate inquiry is whether the evidence is "so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

In ruling on a motion for summary judgment, "[c]ourts must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).  Courts, however, "refrain from making credibility determinations or weighing the evidence."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  On cross-motions for summary judgment, courts "address[] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party."  *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 745 (5th Cir. 2009).

## III.    DISCUSSION

### A. Defendant's Motion for Summary Judgment

As an initial matter, Plaintiffs assert that Defendant has filed what is commonly referred to as a "no-evidence" motion for summary judgment, a type of motion that is allowed in Texas state court but is not recognized in federal court. Pl.'s Resp. Def.'s Mot. Summ. J. ¶¶ 2–3, ECF No. 55. Because Defendant attached no evidence to its motion for summary judgment, Plaintiffs continue, Defendant has not met its initial summary judgement burden. *Id.* The Court disagrees.

The Federal Rules of Civil Procedure provide that motions for summary judgment should generally be supported by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Supreme Court has interpreted this to mean that, while "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion," there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp.*, 477 U.S. at 323. Thus, in cases "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. And the Fifth Circuit has stated that "[u]nder federal law, . . . it has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). Specifically, in *Austin*, the Fifth Circuit rejected an argument that "federal law does not allow for 'no evidence' summary judgment

motions, but instead requires [a movant] to point to evidence in the record showing no issue of material fact on" an element essential to the nonmovant's claim and concluded that the movant in that case "satisfied its summary judgment burden when it alleged that there was no evidence of causation—an element essential to [the nonmovant's] ordinary negligence claim" in that case. *Id.*[1]

The Court therefore turns to the merits of Defendant's arguments. Defendant asserts that Plaintiffs, who have the burden of proof at trial, have not established elements essential to their case: specifically, that Plaintiffs have not established that Defendant's violations were willful, that Plaintiffs were covered under the FLSA, and that Plaintiffs are owed unpaid overtime. Below, the Court addresses each argument in turn.

### 1. *Allegations of Willfulness*

Defendant first asserts that Plaintiffs have not shown that there is a genuine issue of fact as to willfulness. Def.'s Mot. 3–4. However, willfulness is not an element essential to Plaintiffs' claims but rather goes towards the statute of limitations: the FLSA provides that an action for unpaid overtime "may be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

This case was commenced on June 27, 2023, when Plaintiffs filed their original complaint, alleging that Defendant violated the FLSA overtime provision. *See* Pls.' Original Compl.; Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). Plaintiffs' causes of action accrued "at each regular payday immediately following the work period during which

---

[1] *See also Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544–45 (5th Cir. 2005) (stating that "[o]n summary judgment, the moving party is not required to present evidence proving the absence of a material fact issue; rather, the moving party may meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case,'" and concluding that the defendant in that case, the moving party, met this burden by asserting in its motion that the plaintiff, the nonmoving party, "could not prove that [the defendant] had breached a duty that it owed to him, and claiming that there is an absence of evidence to support the claims that [the] [p]laintiff . . . assert[ed] against" the defendant (cleaned up)).

the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir. 1987). Plaintiffs alleged that they were not paid overtime for various time periods from May 13, 2021, to September 23, 2022. Pls.' First Am. Compl. ¶ 24. Thus, their causes of action accrued on or about those dates. An allegation of willfulness would allow Plaintiffs to potentially receive compensation for all of their claims, whereas, if Defendant is not found to be willful, any claims from before June 27, 2021, would be excluded.

"[T]he employee has the burden of demonstrating willfulness for the three-year limitations period to apply . . . ." *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015) (citing *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990)). "[W]illfulness occurs where the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . .'" *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

Plaintiffs rely on an outdated standard for willfulness, from before *McLaughlin* was decided. Pls.' Resp. Def.'s Mot. Summ. J. ¶ 119. This standard, from *Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983), states that the test is simply whether the employers have "awareness of the possible applicability of the FLSA." *Id.* at 193 (citation omitted). Plaintiffs argue that since Luis Mucharraz and Leon Mucharraz understood that they needed to pay overtime for all hours worked in excess of 40 hours per week, they were sufficiently aware that the FLSA applied and thus there is a genuine issue of fact as to willfulness. *Id.* ¶¶ 120–21.

Even utilizing the more stringent standard under *McLaughlin* and *Mohammadi*, the Court concludes that there is a genuine issue of fact as to whether Defendant's alleged violation of the FLSA was willful. In Leon Mucharraz's deposition, he stated that he was familiar with the FLSA and understood that it required him to pay time and a half for all hours worked over 40 hours in a

workweek.  App. Ex. 1, at 11:24–12:11.  He also stated that he was aware that a failure to do so meant that he could be held liable under the FLSA.  *Id.* at 12:12–15.  Thus, there is a genuine issue of fact as to whether Defendant's owner knew that he was violating the FLSA by his alleged failure to pay overtime when Plaintiffs worked more than 40 hours in a workweek.  Therefore, the Court will deny Defendant summary judgment on the issue of willfulness.

### 2.  *Coverage Under the FLSA*

Defendant argues that Plaintiffs provide no evidence that they were covered under the FLSA in the scope of their employment with Defendant.  Def.'s Mot. 4.  Plaintiffs argue that they were employed by Defendant as highway maintenance workers.  Pls.' Resp. Def.'s Mot. Summ. J. ¶ 63.  They argue that highway maintenance workers are covered under the FLSA under 29 C.F.R. § 776.29 as "employees who are repairing or maintaining the instrumentalities of interstate commerce."  *Id.* ¶¶ 64–65.  Thus, they assert, Plaintiffs are subject to individual coverage under the FLSA.  *Id.* ¶ 62.  Plaintiffs also argue that Defendant is subject to enterprise coverage, because Defendant engaged in interstate commerce by having employees working on instrumentalities of interstate commerce and made more than $500,000 in yearly income.  *Id.* ¶¶ 71–72.

"The FLSA was 'enacted in 1938 to protect all covered workers from substandard wages and oppressive working hours.'"  *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 785 (5th Cir. 2020) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 214 (2016)).  It requires employers to pay covered employees the federal minimum wage of $7.25 an hour and pay overtime wages of at least one and a half times the employee's normal wages when the employee works more than 40 hours in a week.  *Id.* at 786 (citing 29 U.S.C. §§ 206(a)(1)(C), 207(a)(1)).

"The FLSA guarantees overtime pay to employees engaged 'in the production of goods for commerce' ('individual coverage') *or* 'employed in an enterprise engaged in commerce or in the

7

production of goods for commerce' ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (quoting 29 U.S.C. § 207(a)(1)).  "*Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Id.*

(a) Individual Coverage

Individual coverage requires that an employee be "engaged in commerce or in the production of goods for commerce." *Mendoza v. Detail Sols., LLC*, 911 F. Supp. 2d 433, 439 (N.D. Tex. 2012) (quoting 29 U.S.C. § 206(a)).  The Fifth Circuit uses a "practical test," looking at "whether an employee's work 'is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.'" *Id.* (quoting *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007)).  The Supreme Court has stated that the employee's activities must be "actually in or so closely related to the movement of the commerce as to be a part of it." *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943).  "Work that is purely local in nature does not meet the FLSA's requirements, but any regular contact with commerce, no matter how small, will result in coverage." *Ovalle v. DRG Concepts, LLC*, No. 3:17-CV-2714-G, 2018 WL 2762553, at *3 (N.D. Tex. June 8, 2018) (quoting *Williams v. Henagan*, 595 F.3d 610, 621 (5th Cir. 2010)).

Under the FLSA:

All employees who are employed in connection with construction work which is closely or intimately related to the functioning of existing instrumentalities and channels of interstate commerce or facilities for the production of goods for such commerce are within the scope of the Act. Closely or intimately related construction work includes the maintenance, repair, reconstruction, redesigning, improvement, replacement, enlargement or extension of a covered facility.  If the construction project is subject to the Act, all employees who participate in the integrated effort are covered, including not only those who are engaged in work at the site of the construction such as mechanics, laborers, handymen, truckdrivers, watchmen, guards, timekeepers, inspectors, checkers, surveyors, payroll workers, and repair men, but also office, clerical, bookkeeping, auditing, promotional, drafting, engineering, custodial and stock room employees.

29 C.F.R. § 776.23(c) (footnote omitted).  Instrumentalities and channels of interstate commerce "include railroads, highways, [and] city streets."  *Id.* § 776.29(a).  "Vehicular roads . . . are . . . indispensable to the interstate movement of persons and goods . . . . If they are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce. . . ."  *Overstreet v. N. Shore Corp.*, 318 U.S. 125, 129–30 (1943).  "Those persons who are engaged in maintaining and repairing such facilities should be considered as 'engaged in commerce' . . . because without their services these instrumentalities would not be open to the passage of goods and persons across state lines."  *Id.* at 130.  "An instrumentality of interstate commerce need not stretch across State lines but may operate within a particular State as a link in a chain or system of conduits through which interstate commerce moves."  *Id.* § 776.29(b)(1).

In its H-2B application to the Department of Labor, Defendant stated that it was seeking visas for highway maintenance workers and listed their job duties as "[m]oving highway right of ways & landscaping highways, remove/install reflective pavement markings (highway striping), may drive vehicles."  App. Ex. 3, at 2, 4.  Defendant used the same language (in Spanish and English) in the job orders it provided to Plaintiffs.  *See* App. Ex. 4, ECF No. 53-4; App. Ex. 8, ECF No. 53-8; App. Ex. 9, ECF No. 53-9; App. Ex. 10, ECF No. 53-10; App. Ex. 11, ECF No. 53-11; App. Ex. 12, ECF No. 53-12; App. Ex. 18, ECF No. 53-18; App. Ex. 19, ECF No. 53-19; App. Ex. 20, ECF No. 53-20.

Plaintiff Tarazona Carvajal states in his declaration that in August 2021, he was engaged in cleaning, excavation, and installing gabions on bridges on roads near Fort Davis, Texas.  App. Ex. 5, at 5.  He also engaged in installing highway protective lane rails and installing a security cable in roads connecting Odessa to Midland.  *Id.* at 6.  In 2022, he installed security cables in roads, cleaned and repaired fissures in bridges, and assisted in road closures.  *Id.* at 9, 12.  Plaintiff

Hurtado Garcia stated that he "made the rails of the roads," painted road lines, and maintained and cleaned bridges on roads. App. Ex. 14, at 2. Plaintiff Gomez Pinto stated that he put metal rails on roads and helped with road closures. App. Ex. 15, at 3. Plaintiff Herrera Pico stated that he worked putting "restriction cables in the middle of" a highway. App. Ex. 6, at 2. He stated that he also helped construct roads, cut grass on the side of roads, and place traffic signs on roads. *Id.* at 3. He stated that in 2022, he was engaged in work placing cables in highways and pouring cement to hold the cables. *Id.* at 4. Plaintiff Ardila Pena stated that he worked cutting grass arounds signposts, bridges, and rest areas along roads. App. Ex. 16, at 2. He worked along the route from Alpine to Marfa (Route 17), Marfa to Presidio (Route 67), Alpine to Terlingua, and Alpine to Marathon. *Id.* He also worked paving and painting roads. *Id.* at 3. In 2022, he worked cutting grass alongside the roads again and carrying out road closures for the state. *Id.* at 4. He also installed gabions for bridges and platforms and painted road lines. *Id.* Plaintiff Diaz Galvis stated that he worked "on the road" and "chang[ing] rails.". App. Ex. 17, at 5–6. Plaintiff Pena Castillo also stated that he worked cutting grass around road signs, bridges, and rest areas. App. Ex. 7, at 2. He also painted roads. *Id.* at 4. In 2021, he worked cutting grass along roads and placing cables in the middle of highways. *Id.* at 4–5. In 2022, he helped close roads on the highway and install rails on highways. *Id.* at 6. Plaintiff David Garcia Rodriguez's declaration does not clarify exactly what work he did but does allude to working "on the road." App. Ex. 43, at 8. Plaintiff Tarazona Carvajal identifies Plaintiff Garcia Rodriguez as someone who traveled with him from Colombia and worked with him at Defendant. App. Ex. 5, at 2. Defendant also admitted in its requests for admissions that Plaintiff Garcia Rodriguez worked for it. App. Ex. 46, at 8, ECF No. 53-46. Thus, it seems extremely likely that Plaintiff Garcia Rodriguez engaged in

the same activities as the other plaintiffs, such as cutting grass, painting highways, and assisting state employees with closing highways.

Taking the evidence in the light most favorable to the nonmovants, it appears that all eight Plaintiffs were employed in work related to the functioning of channels of interstate commerce, the maintenance of roads and highways in Texas. Therefore, there is a genuine issue of fact as to whether individual coverage under the FLSA applies.

(b) Enterprise Coverage

Enterprise coverage requires that a company:

(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A). "The first prong of the enterprise coverage definition can be met in one of two ways, either via the 'engaged in commerce' clause or via the 'handling' clause. Given the identical language, the 'engaged in commerce' clause can be analyzed in . . . the same manner as individual coverage is analyzed." *Mendoza*, 911 F. Supp. 2d at 439. Enterprise commerce does require that two or more of the company's employees are engaged in commerce or the production of goods for commerce. *Romero v. Funes*, No. CIV.A. H-11-3373, 2013 WL 655250, at *3 (S.D. Tex. Feb. 21, 2013).

As discussed above, the Court has concluded that there is a genuine issue of material fact as to whether Plaintiffs engaged in interstate commerce. Defendant has admitted in its responses to requests for admissions that Plaintiffs were its employees. *See* App. Ex. 46, at 6–9. Thus, Defendant had employees engaged in commerce. Further, Plaintiffs have submitted Defendant's

tax returns as exhibits.  These tax returns show that for 2021 and 2022, Defendant had gross annual

sales of greater than $500,000.  *See* App. Ex. 47, ECF No. 56; App. Ex. 48, ECF No. 56-1.  Thus,

there is also a factual dispute as to whether enterprise coverage applies.

### 3. *Evidence of Unpaid Wages*

Lastly, Defendant argues that Plaintiffs have not provided any evidence to support their

allegations of unpaid overtime, such as "records of hours worked, corroborating witness testimony,

or any documentary support for their claims."  Def.'s Mot. 5.  Defendant also argues that its own

payroll records and deposition testimony (which it did not provide with its motion) contradict

Plaintiffs' claims.  *Id.*

Plaintiffs rely on the framework laid out in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S.

680 (1946).  Pls.' Resp. Def.'s Mot. Summ. J. ¶ 50.  In *Anderson*, the Supreme Court held that

"where the employer's records are inaccurate or inadequate and the employee cannot offer

convincing substitutes," then "an employee has carried out his burden if he proves that he has in

fact performed work for which he was improperly compensated and if he produces sufficient

evidence to show the amount and extent of that work as a matter of just and reasonable inference."

328 U.S. at 687.  This is in order to avoid penalizing an employee when an employer has "fail[ed]

to keep proper records in conformity with his statutory duty."  *Id.*  The employer then has the

burden to produce "evidence of the precise amount of work performed or . . . evidence to negative

the reasonableness of the inference to be drawn from the employee's evidence.  If the employer

fails to produce such evidence, the court may then award damages to the employee, even though

the result be only approximate."  *Id.* at 687–88.  The evidence of hours worked by an employee

need not be "perfectly accurate," but must just "provide[] a sufficient basis to calculate the number

of hours worked by each employee."  *Marshall v. Mammas Fried Chicken, Inc.*, 590 F.2d 598, 599

(5th Cir. 1979).  "Under this standard, the court may draw inferences from oral testimony, sworn declarations, and any other relevant documentary evidence that the plaintiff produces."  *Lopez v. Reliable Clean-Up & Support Servs., LLC*, No. 3:16-CV-2595-D, 2018 WL 3609271, at \*14 (N.D. Tex. July 27, 2018).

Plaintiffs provided Defendant's records as exhibits in their response, and the records are inadequate and incomplete.  Defendant can only offer documentation of what was reportedly paid to some of the Plaintiffs during some of the time that they worked for Defendant.  Further, even for these Plaintiffs there is little documentation of what days and hours were worked.  Therefore, the *Mt. Clemens* framework applies here.  Plaintiffs' declarations provide evidence that they performed work for which they were unjustly compensated.  Therefore, there is a genuine issue of material fact, and the Court will deny Defendant summary judgment on Plaintiffs' FLSA claims.

(a) Plaintiff Tarazona Carvajal

Plaintiff Tarazona Carvajal states that in 2021, he worked from 6:30 a.m. until 8:30 p.m. and was paid $500 a week.  App. Ex. 5, at 3.  At one point, he worked from Monday to Sunday and only received $400 a week.  *Id.*  At another point, his salary was increased to $600 a week. *Id.* at 4.  When he returned to work for Defendant in 2022, he stated that he would start work at 6:30 a.m. and end at 7:30 or 8:00 p.m. and make $300 a week.  *Id.* at 8–9.  He later stated that he was working from 6 a.m. until 7 p.m. and was paid $700 a week, which was reduced to $600 a week. *Id.* at 9.  At another point, he stated that he worked from 5:30 a.m. or 6 a.m. until 6 p.m. or 7 p.m. and made $600 a week.  *Id.* at 10.  At another point, he stated that he was working from 5:30 a.m. or 6 a.m. until 8 p.m. or 8:30 p.m. and was paid $600 a week.  *Id.* at 13.  At yet another point, he said that he worked from 6 a.m. until 8:30 p.m. and was paid $700 a week.  *Id.* at 14. Thus, it appears that he is alleging that he worked at least 12 hours a day and at least 6 days a

week.  There are no paystubs for Plaintiff Tarazona Carvajal from 2021.  Payroll reports from 2022

show Plaintiff Tarazona Carvajal earning $19.50 an hour and never working overtime.  *See* App.

Ex. 29, at 3, 6, 12, 15, ECF No. 53-29; App. Ex. 30, at 3, ECF No. 53-30.  Exhibit 33 is Defendant's

paystubs for Plaintiff Tarazona Carvajal during the year 2022, and they reflect that he was paid at

a rate of $19.50 and never worked more than 40 hours a week.  *See* App. Ex. 33, ECF No. 53-33.

Thus, there is a factual dispute as to whether he worked overtime for which he was not

compensated.

  (b) <u>Plaintiff Hurtado Garcia</u>

  Plaintiff Hurtado Garcia states that he worked from 5 in the morning until 8 or 9 at night,

7 days a week.  App. Ex. 14, at 2.  He states that he was paid $600 a week.  *Id.*  His paystubs,

contained in Exhibit 31, state that he was paid at a rate of $18.92 per hour and worked a maximum

of 40 hours per week.  *See* App. Ex. 31, ECF No. 53-31.  Thus, there is a factual dispute as to

whether he worked overtime for which he was not compensated.

  (c) <u>Plaintiff Gomez Pinto</u>

  Plaintiff Gomez Pinto states that he was paid $600 a week.  App. Ex. 15, at 3.  He states

that he worked from 6 a.m. to 7 p.m., including one day where he did not stop work until 12:30

a.m. and then had to start again at 3 a.m.  *Id.*  There are no paystubs or payroll documents for

Plaintiff Gomez Pinto to counteract his claims that he worked overtime without proper

compensation.  Therefore, the Court concludes that there is a genuine issue of fact as to whether

Plaintiff Gomez Pinto worked overtime and was not properly paid for it.

  (d) <u>Plaintiff Herrera Pico</u>

  Plaintiff Herrera Pico states that he was paid $400 or $500 per week in cash.  App. Ex. 6,

at 2.  He states that he worked between 85 and 90 hours a week.  *Id.*  He states that he was

sometimes paid $600 a week.  *Id.* at 3.  In 2022, he states at one point that he received $700 a

week, and then later his pay was lowered to $600 a week.  *Id.* at 4.  He stated that they worked 7

days a week, from 6 a.m. until 7 p.m.  *Id.*  The payroll documents and paystubs Defendant provided

state that Plaintiff Herrera Pico was paid $19.50 an hour and never worked overtime.  *See* App.

Ex. 29, at 2, 6, 9, 12; App. Ex. 30, at 2, 5; App. Ex. 35, ECF No. 53-35.  Therefore, there is a

genuine question of fact as to whether he was not paid overtime that he was owed.

     (e)  <u>Plaintiff Ardila Pena</u>

     Plaintiff Ardila Pena's declaration is rather confused concerning the years that he worked

for Defendant.  It contains statements regarding his work for Defendant in 2019, which are not

relevant here.  He states that his second season working for Defendant was in 2022.  App. Ex. 16,

at 4.  Then, later, he states that he also worked for Defendant in 2021.  *Id.*  He states that at one

point, he was paid $400 or 500 a week when working for Defendant.  *Id.*  He stated that they would

work from sunrise until sunset.  *Id.*  He stated that one year, either 2021 or 2022, but it is unclear,

he earned $650 or $750 a week.  *Id.*

     There is little documentation in his declaration as to what hours he worked.  However, he

is also mentioned in Plaintiff Tarazona Carvajal's declaration as someone who traveled with him

and worked for Defendant in 2021.  App. Ex. 5, at 2.  Given Plaintiff Tarazona Carvajal's use of

the word "we" when describing his work hours and payment, after mentioning that Plaintiff Ardila

Pena and others worked with him at Defendant, it seems likely that Plaintiff Ardila Pena worked

the same hours, for about the same pay, as Plaintiff Tarazona Carvajal.  *See id.* at 3–6.  Plaintiff

Pena Castillo also describes working with Plaintiff Ardila Pena and mentions that they would get

up at 4 a.m. and work until 9:30 p.m. or 10 p.m.  App. Ex. 7, at 4.  On the other hand, Defendant's

payroll reporting form reflects that Plaintiff Ardila Pena was paid an hourly wage of $18.53 in

2021 and never worked overtime.  *See* App. Ex. 28, at 2, 6, 10, 14, 22, 26, 30, 34, 38, 41, 45, 49, 53, 61, 65, 69, 73, 77, 81, 85, 93; App. Ex. 36, ECF No. 53-36.  Therefore, there is a genuine question of fact as to whether he was not paid overtime that he was owed.

(f)  Plaintiff Diaz Galvis

Plaintiff Diaz Galvis stated that he worked from between 4 a.m. and 6 a.m. to 6 p.m. or 7 p.m.  App. Ex. 17, at 5.  He stated that he would work for more than 12 hours a day from Monday to Saturday, and some Sundays as well.  *Id.* at 6.  He was paid $300 for his first week, then $450 dollars for a month and a half, then $500 for three months, and then $600 for the remainder of his time at Defendant.  *Id.*  According to the payroll reporting form and paystubs, he was paid $18.92 an hour and never worked overtime.  App. Ex. 30, at 1; App. Ex. 38, ECF No. 53-38.  Thus, based on the discrepancy between his statements and the documents from Defendant, there is a genuine question of fact as to whether he is owed overtime payments.

(g)  Plaintiff Pena Castillo

Plaintiff Pena Castillo included statements in his declaration about his work for Defendant in 2019, which is not relevant to this suit.  However, he also stated that, in 2021, he would work from 7 a.m. to 8:30 p.m. and receive $400 or $500 a week.  App. Ex. 7, at 4.  He stated that he would work for more than 12 hours a day and receive $600 a week.  *Id.* at 5.  In 2022, he stated that he would start work at around 5 a.m. and sometimes finish at around 7 p.m.  *Id.* at 5–6.

According to the payroll report, Plaintiff Pena Castillo was paid $18.53 an hour in 2021 and $20.00 an hour in 2022 and never worked overtime.  *See* App. Ex. 28, at 6, 14, 18, 22, 26, 30, 34, 38, 42, 46, 50, 54, 57, 62, 66, 70, 74, 78, 82, 86, 90, 94; App. Ex. 29, at 3, 6, 9, 12; App. Ex. 32, ECF No. 53-32.  However, again, if Plaintiff Pena Castillo's statements are true, he was working at least 72 hours a week and should have received a significant amount of overtime.

Therefore, there is a question of fact as to whether he was not paid overtime that he was entitled to.

(h) Plaintiff Garcia Rodriguez

Plaintiff Garcia Rodriguez stated that he would work for 12 to 14 hours a day, Monday through Saturday, and would make $500 a week. App. Ex. 43, at 6. Sometimes he was only paid $300 a week. *Id.* at 7. There are no payroll documents or paystubs for Plaintiff Garcia Rodriguez. Therefore, the Court considers that there is a genuine question of fact as to whether he was properly paid for overtime worked.

**B. Plaintiffs' Motion for Summary Judgment**

*1. Defendant's Counter-Claim Against Plaintiffs*

Defendant asserted a counter-claim for conversion against Plaintiffs Diaz Galvis, Hurtado Garcia, Gomez Pinto, Tarazona Carvajal, and Herrera Pico ("Counter-Defendants"). Def.'s Answer, Defenses, Affirmative Defenses, & Counterclaim Pls.' First Am. Compl. ¶¶ 57, 62–66, ECF No. 23. Defendant asserted that after the Counter-Defendants left their employment, Defendant noted that one of its vehicles, previously in possession of the Counter-Defendants, was not returned to it. *Id.* ¶¶ 59–60.

The elements for a state law claim of conversion in Texas are "that (1) the plaintiff owned, possessed, or had the right to immediate possession of personal property, (2) the defendant exercised dominion and control over the property in an unlawful and unauthorized manner, (3) the defendant refused plaintiff's demand for return of the property, and (4) the plaintiff suffered injury." *Landmark Int. Corp. v. Texmore, Inc.*, No. 14-23-00889-CV, 2025 WL 454223, at *3 (Tex. App. Feb. 11, 2025). Counter-Defendants assert that there is no question of fact as to the second element. Pls.' Mot. ¶¶ 41, 47. Counter-Defendants assert that based on Leon Mucharraz's

deposition, there is no evidence that they ever had possession of the truck. *Id.* ¶¶ 41–45. In its response, Defendant argues that circumstantial evidence—such as the departure of Counter-Defendants at the same time the truck went missing and Counter-Defendants' access to the keys—creates a genuine factual dispute that precludes summary judgment. Resp. Pls.' Mot. Summ. J. 2 [hereinafter Def.'s Resp.], ECF No. 72.

Both sides refer to Leon Mucharraz's deposition testimony. In his deposition, Leon Mucharraz stated that when his brother visited the worksite in Odessa, he noticed that the Counter-Defendants were missing, and the truck was gone. Def.'s Resp. Ex. A, at 66:1–6, ECF No. 72-1. Leon Mucharraz stated that he concluded that the Counter-Defendants could have taken the truck, since they went missing at the same time as the truck and knew where the keys to the truck were. *Id.* at 66:15–67:11. He stated that he filed a police report and gave the police the Counter-Defendants' names. *Id.* at 67:23–68:3. The Counter-Defendants never had permission to use the vehicle. *Id.* at 68:6. Lastly, Leon Mucharraz stated that he and his brother called and texted the Counter-Defendants without any response. *Id.* at 69:3–6. The Counter-Defendants also attach the police report from Ector County as an exhibit. *See* Pls.' Mot. Ex. 49, ECF No. 62-50. The report simply states that a white 1999 Dodge pickup truck was reported stolen on September 12, 2022, and that the suspects were unknown. *Id.* at 2. Counter-Defendant Tarazona Carvajal stated in his declaration that he and Counter-Defendant Gomez Pinto left separately from Counter-Defendants Herrera Pico, Diaz Galvis, and Hurtado Garcia. Pls.' Mot. Ex. 5, at 14–15, ECF No. 62-6. He stated that he did not take the truck. *Id.* at 15. Counter-Defendant Gomez Pinto stated that he and Counter-Defendant Tarazona Carvajal left on a bus from Alpine to Midland. Pls.' Mot. Ex. 15, at 4, ECF No. 62-16.

The Court must consider all of the evidence in the light most favorable to the non-movant. Even so, Defendant has presented no evidence that Counter-Defendants ever unlawfully exercised control over the truck. Leon Mucharraz's testimony is that the truck went missing, and he presumed that the Counter-Defendants could have taken it. "Mere suspicion is insufficient to carry [a plaintiff or counter-plaintiff's] burden of establishing a genuine issue for trial." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 359 (5th Cir. 2017). "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal fact, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). Defendant can offer no more than suspicion that Counter-Defendants took the vehicle. Therefore, the Court finds that there is no genuine issue of fact as to Defendant's counter-claim and will grant summary judgment to Counter-Defendants.

### 2. *Defendant's Affirmative Defenses*

Plaintiffs argue that they should be granted summary judgment on all of Defendant's affirmative defenses, which may be labeled as (1) failure to state a claim, (2) the defenses, protections, and limitations of the FLSA, (3) acting in good faith and upon reasonable grounds, (4) a lack of willfulness or reckless disregard, (5) waiver, (6) estoppel, (7) laches, (8) the statute of limitations, (9) legitimate business reasons, (10) offset, (11) de minimus or non-compensable time, and (12) failure to mitigate. Pls.' Mot. ¶¶ 48–119; *see also* Def.'s Answer, Defenses, Affirmative Defenses, & Counterclaim Pls.' First Am. Compl. ¶¶ 42–56.

In its response, Defendant argues that Plaintiffs have not met the "high standard" to be granted summary judgment on Defendant's affirmative defenses. Def.'s Resp. 6. It argues that Plaintiffs' claims are "barred in whole or in part by applicable statutes of limitations," but provides no evidence for this. *Id.* It also argues that "substantial factual disputes remain regarding the

precise number of hours Plaintiffs worked, the compensation they received, and the actual working conditions." *Id.* at 6–7. Lastly, it argues that "Defendants [*sic*] have provided evidence establishing nuanced factual issues that necessitate jury assessment—including compliance records, governmental directives relied upon, and the detailed historical employment relationship between Plaintiffs and Defendants." *Id.* at 8.

The Court notes that Defendant has not attached any of this evidence to its response but rather simply states that it has provided evidence. "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). "Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (citation omitted). Lastly, the Court also notes that it is not required to "search [the] entire record to ensure that [the] record is 'bereft of genuine issue of material fact.'" *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992) (citation omitted).

Where a defendant fails to address or to respond to a plaintiff's motion for summary judgment regarding an affirmative defense, the affirmative defense is considered abandoned or waived. *Roberts v. Overby-Seawell Co.*, No. 3:15-CV-1217-L, 2018 WL 1457306, at *11 (N.D. Tex. Mar. 23, 2018); *see also Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived . . . ."). Thus, the Court finds that most of Defendant's affirmative defenses have been abandoned or waived.

With respect to Defendant's statute of limitations defense, Defendant argues that "[d]etermining the precise date upon which Plaintiffs became aware or should have become aware of potential violations involves factual determinations unsuitable for resolution at summary judgment." Def.'s Resp. 6. As mentioned above, *see supra* Section III.A.2, a cause of action for failure to pay overtime under the FLSA accrues at the payday following the work period for which the overtime was worked. Plaintiffs' allegations in their declarations about when in 2021 and 2022 they worked unpaid overtime are somewhat vague. Still, any violations from June 27, 2021, to the time they finished working for Defendant will fall under the two-year statute of limitations. As discussed above, proof of willfulness on Defendant's part will extend the statute of limitations to three years. However, Plaintiffs rely on an outdated standard from *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1971), to assert that willfulness just requires that Defendant had an awareness of the possible applicability of the FLSA. Pls.' Mot. ¶ 190. Again, as mentioned above, the standard is that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ." *Mohammadi*, 605 F. App'x at 332. Plaintiffs do not offer evidence for whether Defendant knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. Therefore, the Court will not grant Plaintiffs summary judgment on the affirmative defense of the statute of limitations, and Defendant will be free to argue this affirmative defense at trial.

As for the affirmative defenses of waiver, estoppel, and laches, the only other affirmative defenses that Defendant mentions by name, the Court notes that "[it] is unclear whether the equitable defenses of waiver, estoppel, unclean hands, and laches are available under the FLSA." *Tran v. Thai*, No. H–08–3650, 2010 WL 5232944, at *7 (S.D. Tex. Dec. 16, 2010) (citing *Ayers v. Consol. Const. Servs. Of SW Fla., Inc.,* No. 2:07–cv–123, 2007 WL 4181910, at * 1–2 (M.D.

Fla. Nov. 26, 2006); *Perez-Nunez v. North Broward Hosp. Dist.*, No. 08–61583–CIV, 2009 WL 723873, at *2 (S.D. Fla. Mar. 13, 2009)).  However, even if these defenses were available to Defendant, it provides no evidence to demonstrate a genuine issue of fact, simply stating that there are "[s]ignificant factual disputes" about when Plaintiff learned about the alleged overtime violations, and that Plaintiffs had "extensive interactions with management" without providing any evidence of these claims.  Def.'s Resp. 6.  Therefore, the Court will grant Plaintiffs summary judgment on these affirmative defenses as well.

### 3. *Plaintiffs' FLSA Claims for Unpaid Overtime*

Lastly, Plaintiffs seek summary judgment on their claims for unpaid overtime.  Pls.' Mot. ¶¶ 120–94.  They assert that there was an employer-employee relationship between Defendant and Plaintiffs during the time period in question.  *Id.* ¶¶ 127–29.  They also assert that Plaintiffs were engaged in activities that fall under both individual and enterprise coverage under the FLSA.  *Id.* ¶¶ 130–43.  And they argue that Defendant violated the FLSA overtime requirements.  *Id.* ¶¶ 144–68.

To bring an action for unpaid overtime compensation, a plaintiff must show "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).  In its response, Defendant's only argument is that there is a genuine issue of fact as to Plaintiffs' hours worked and whether they worked overtime for which they are entitled to compensation.  Def.'s Resp. 8–10.  Defendant does not make any arguments regarding the first two elements of Plaintiffs' FLSA claims.  Defendant has already conceded in its responses to requests for admission that Plaintiffs

were its employees. *See* Pls.' Mot. Ex. 46, at 5–8, ECF No. 62-47. Further, Plaintiffs were engaged in activities covered under the FLSA. *See supra* Section III.A.3. Plaintiffs were engaged in construction work on roads and highways, which are channels of interstate commerce. Plaintiffs have therefore satisfied the first two elements of their claims.

As to the third and fourth elements, the Court again looks to the *Anderson v. Mt. Clemens Pottery Co.* standard. This requires that the Court first determine whether the employer kept "proper and accurate records" of the employees' hours. *Kirk v. Invesco, Ltd.*, No. H-15-833, 2016 WL 4394336, at *4 (S.D. Tex. Aug. 18, 2016) (quoting *Anderson*, 328 U.S. at 687). Here, the Court determines that Defendant's records are not complete or accurate. Defendant asserts that it "ha[s] provided and can highlight substantial payroll documentation, bank records, pay stubs, and transaction records that support [its] position regarding proper payment to Plaintiffs." Def.'s Resp. 10. However, Defendant did not attach any of this documentation to its response to Plaintiffs' motion for summary judgment. If Defendant does have this documentation, then the proper time to produce it would have been as a response to its motion. "We do not, . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). That said, Plaintiffs provided payroll reports made by Defendant to the Texas Department of Transportation for certain weeks in 2021 and 2022.[2] *See* Pls.' Mot. Ex. 28, ECF No. 62-29; Pls.' Mot. Ex. 29, ECF No. 62-30; Pls.' Mot. Ex. 30, ECF No. 62-31. However, these payroll reports do not cover all the time Plaintiffs worked for Defendants, nor do they contain information for all Plaintiffs. Plaintiffs also provided paystubs from Bank of America for Plaintiffs Hurtado Garcia, Pena Castillo, Tarazona Carvajal, Herrera Pico, Ardila

---

[2] The party opposing a motion for summary judgment "may use proof filed by the movant to satisfy his burden." *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1994).

Pena, and Diaz Galvis.  *See* Pls.' Mot. Ex. 31, ECF No. 62-32; Pls.' Mot. Ex. 32, ECF No. 62-33; Pls.' Mot. Ex. 33, ECF No. 62-34; Pls.' Mot. Ex. 35, ECF No. 62-36; Pls.' Mot. Ex. 36, ECF No. 62-37; Pls.' Mot. Ex. 38, ECF No. 62-39; Pls.' Mot. Ex. 39, ECF No. 62-40.  Again, these paystubs are only for some of Plaintiffs and do not cover all of the time that Plaintiffs worked for Defendants.  If an employer does not keep accurate records of the plaintiffs' hours, the burden-shifting standard of *Anderson v. Mt. Clemens Pottery Co.* applies.  *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 362 (5th Cir. 2023).

Next, "the employee then has the burden 'to produce[] sufficient evidence to show the amount and extent of [his] work as a matter of just and reasonable inference.'"  *Kirk*, 2016 WL 4394336, at *4 (quoting *Anderson*, 328 U.S. at 687).  This does not require "perfectly accurate evidence," but must be "a sufficient basis to calculate the number of hours worked by each employee." *Marshall*, 590 F.2d at 599.  Evidence that employees worked unpaid overtime can be based on testimony of hours worked.  *Olibas v. Barclay*, 838 F.3d 442, 450 (5th Cir. 2016); *Flores*, 73 F.4th at 363.  However, this testimony typically takes the form of "estimates of weekly overtime hours" or "an estimated average of hours worked."  *Flores*, 73 F.4th at 363.  For example, the plaintiffs in *Flores* provided testimony about their "usual work schedule," including their "usual daily starting and quitting times."[3]  *Id.*  Although Plaintiffs' declarations do provide some sporadic testimony about hours worked, they do not provide a clear estimate, or even a best guess, of how many weekly hours of overtime each plaintiff worked.  The Court concludes that it does not have a sufficient basis to calculate or estimate the number of hours worked in a week by each employee.  And Plaintiff provided evidence, presumably provided to it by Defendant, of hours worked by six

---

[3] The Sixth Circuit has also held that evidence is sufficient "when it detail[s] the specific hours that the employee typically worked," such as "specific day-to-day hourly routines that add[] up to well over 40 hours per week." *Viet v. Le*, 951 F.3d 818, 823–24 (6th Cir. 2020).

of the eight Plaintiffs.  *See* Pls.' Mot. Ex. 28 (containing payroll information for Plaintiffs Ardilla Pena and Pena Castillo); Pls.' Mot. Ex. 29 (containing payroll information for Plaintiffs Herrera Pico, Pena Castillo, and Tarazona Carvajal); Pls.' Mot. Ex. 30 (containing payroll information for Plaintiffs Diaz Galvis, Herrera Pico, and Tarazona Carvajal); Pls.' Mot. Ex. 31 (containing paystubs for Plaintiff Hurtado Garcia); Pls.' Mot. Ex. 32 (containing paystubs for Plaintiff Pena Castillo); Pls.' Mot. Ex. 33 (containing paystubs for Plaintiff Tarazona Carvajal); Pls.' Mot. Ex. 35 (containing paystubs for Plaintiff Herrera Pico); Pls.' Mot. Ex. 36 (containing paystubs for Plaintiff Ardila Pena); Pls.' Mot. Ex. 38 (containing paystubs for Plaintiff Diaz Galvis); Pls.' Mot. Ex. 39 (containing paystubs for Plaintiff Pena Castillo).  None of this evidence indicates that these six plaintiffs worked any overtime.  Therefore, there is a material issue of fact as to whether any overtime was worked, and the Court will not grant these Plaintiffs summary judgment on their FLSA claims against Defendants.

For two of the plaintiffs, Elkin Humberto Gomez Pinto and Juan David Garcia Rodriguez, no documents have been provided by Defendant to show what hours they worked.  Further, Defendant has not produced any evidence to negative the reasonableness of the inference to be drawn from Plaintiffs' evidence.  However, these plaintiffs' declarations provide insufficient information to determine if they worked overtime or how many hours of overtime they worked. Therefore, the Court will deny these plaintiffs summary judgment as to their FLSA claims also.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 47) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs'/Counter-Defendants' Motion for Summary Judgment as to Mijelum's Counter-Claims and Affirmative Defenses and for Summary Judgment

as to Plaintiffs' Claims for Violations of the FLSA (ECF No. 62) is **GRANTED in part** and **DENIED in part**.  Specifically, the motion is **GRANTED** as to Defendant's counter-claim.  The motion is also **GRANTED** as to Defendant's affirmative defenses, except for the defense relating to willfulness and the statute of limitations.  The motion is **DENIED** as to Plaintiffs' claims for unpaid overtime under the FLSA.

Signed this 10th day of June, 2025.

---

**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**