IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| AURELIO TARAZONA CARVAJAL, | § | |
| EDUAR HURTADO GARCIA, ELKIN | § | |
| HUMBERTO GOMEZ PINTO, FREDY | § | |
| ALEXANDER HERRERA PICO, JAIRO | § | |
| ANDRES ARDILA PEÑA, JORGE | § | |
| ELIECER DIAZ GALVIS, WILSON | § | |
| FABIAN PEÑA CASTILLO, JUAN | § | CAUSE NO.  3:23-CV-00245-RFC |
| DAVID GARCIA RODRIGUEZ, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| MIJELUM, L.L.C., | § | |
|     Defendant. | § | |

**DEFENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

COMES NOW Defendant Mijelum, L.L.C and files this, its Proposed Findings of Fact and

Conclusions of Law, and submits to the Court the following:

**FINDINGS OF FACT**

**A. Procedural posture and matters already decided**

1.  The Court tried this action without a jury on May 26, May 27, and May 28, 2026.

2.  Mijelum, L.L.C. was the sole remaining defendant at trial. Leon Mucharraz and Luis

    Mucharraz testified as Mijelum's co-owners and managers, not as parties against whom

    relief remained pending.

3.  Plaintiffs presented edited video trial depositions of Aurelio Tarazona Carvajal, Eduar

    Hurtado Garcia, Elkin Humberto Gómez Pinto, Fredy Alexander Herrera Pico, Jairo

    Andrés Ardila Peña, Jorge Eliecer Diaz Galvis, Wilson Fabián Peña Castillo, and Juan

David García Rodríguez. The Court also heard live testimony from Luis Mucharraz and Leon Mucharraz and admitted the parties' documentary exhibits.

4. References below to "Tr. I," "Tr. II," and "Tr. III" mean the transcripts of the proceedings conducted on May 26, May 27, and May 28, 2026, respectively.

5. The Court has considered the testimony, the admitted exhibits, the parties' arguments, the Court's notes, the three trial-transcript volumes, the governing law, and the parties' post-trial submissions. The Court has evaluated each witness separately and has not treated testimony about "the group," "we," or "the workers" as proof of another Plaintiff's hours unless the evidence supplied a reliable basis for doing so.

6. On June 10, 2025, the Court denied Mijelum's motion for summary judgment; granted Plaintiffs' motion as to Mijelum's conversion counterclaim and as to Mijelum's affirmative defenses except the defense relating to willfulness and limitations; and denied Plaintiffs' motion as to their FLSA overtime claims. ECF No. 79.

7. In that order, the Court determined that Mijelum's records were not complete or accurate and that the burden-shifting framework stated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), applies. ECF No. 79.

8. The same order did not establish that any Plaintiff worked uncompensated overtime. To the contrary, the Court held that the then-existing declarations did not provide "a sufficient basis to calculate or estimate the number of hours worked in a week by each employee." ECF No. 79 at 24–25.

9. Employee status and FLSA coverage were not disputed at trial. The issues for decision were whether each Plaintiff proved that he worked overtime for which Mijelum failed to

compensate him, the amount of any resulting damages, and—only if a violation were proved—whether the violation was willful for purposes of 29 U.S.C. § 255(a).

10. Jairo Ardila Peña repeatedly pleaded a claim based on employment in 2022, but his evidence concerned work in 2021. On November 7, 2025, the Court denied leave to amend the complaint and declined to include his 2021 claim in the final pretrial order. ECF No. 117 at 7–9. The Court observed that the pleading error left him "without a means by which to seek relief for his claims." *Id.* at 6.

11. At the close of Plaintiffs' evidence, the Court granted Mijelum's Rule 52(c) motion as to Jairo Ardila Peña and denied the motion as to the other Plaintiffs. Tr. III 183:2–3. The ruling disposed of Ardila Peña's claim on the merits and left no damages claim pending for him.

12. Plaintiffs' post-trial brief nevertheless included Ardila Peña in its damages table and requested $25,635.36 in unpaid wages and an equal amount in liquidated damages for him. ECF No. 148 at 23. Those amounts cannot form any part of a judgment in this action.

13. Before closing argument, the Court identified credibility as the principal factual issue. The Court stated that it would review the documents, notes, and transcripts to decide whether Plaintiffs' testimony or Mijelum's testimony was credible and would reach damages only after resolving that question. Tr. III 183:15–184:4.

14. The Court makes the credibility determinations below after considering the content of the testimony, the witnesses' opportunities to perceive the events, the internal consistency of each account, consistency with other testimony and contemporaneous evidence, the

witnesses' interests, the lapse of time, and the reasonableness of the inferences urged by each side.

**B. Mijelum's business, the work, compensation, and records**

15. Mijelum performed highway-maintenance work under contracts with the Texas Department of Transportation. Its projects included lane closures, mowing, guardrail and cable work, pavement marking, bridge work, and related manual labor in several West Texas counties. Tr. I 140:17–142:16; Tr. III 56:24–57:23.

16. Mijelum recruited seasonal workers from Colombia through the H-2B program in 2021 and 2022. The job-order materials described highway-maintenance work, listed a prevailing hourly wage, contemplated a forty-hour workweek, and provided an overtime rate for hours worked over forty.

17. Mijelum furnished transportation, tools, and lodging to the workers. The work occurred at different highway sites, at Mijelum's Alpine yard, and, on some occasions, at property associated with Luis Mucharraz.

18. The projects did not operate on one unvarying schedule. Work depended on the location and type of project, TxDOT's requested work window, weather, holidays, equipment availability, illness, travel between locations, and whether a project was active. Luis Mucharraz testified that workers did not work the same shift every day, every week, or every pay period. Tr. I 185:19–187:5. The Court credits that testimony.

19. When highway work was unavailable or did not provide a full week, Mijelum sometimes offered work at the yard or at Luis Mucharraz's property so workers could approach a full week. Luis Mucharraz testified that this work was offered to complete approximately

thirty-eight to forty hours, was not free labor, and did not increase a workweek to seventy, eighty, or ninety hours. Tr. I 187:1–13.

20. Plaintiffs testified instead that yard or house work often occurred before or after highway work and increased their workdays. The Court accepts that Plaintiffs performed some yard and property work, but it does not credit the assertion that such work routinely followed a full highway shift and produced the fixed weekly totals used in Plaintiffs' damages tables.

21. Some workers were paid in cash before they obtained Social Security numbers; workers were entered into the payroll system and paid by check after obtaining the necessary information. Tr. I 187:14–188:8; Tr. III 121:17–123:25. Cash payment, standing alone, does not establish the number of hours worked, the amount owed, or an intent to conceal overtime.

22. Mijelum did not use a punch clock, time cards, or a sign-in and sign-out system. Luis Mucharraz recorded hours in temporary notes and entered information into the LCP or certified-payroll system, but he did not retain all underlying notes. Tr. I 182:8–185:1.

23. Mijelum should have preserved better records. Its certified payrolls and paystubs do not cover every Plaintiff or every period of employment, and the Court adheres to its prior determination that Mijelum's records were incomplete or inaccurate.

24. The recordkeeping deficiency does not establish that Plaintiffs' pleaded schedule was true. It also does not require the Court to accept every retrospective estimate, to apply the highest daily span to every week, or to assume that every interval between departure and return was compensable work.

25. Existing contemporaneous records retain evidentiary value even though they are incomplete. Some paystubs reflected fewer than forty hours—such as thirty-five, thirty-seven, or thirty-eight hours—and no admitted payroll document showed the uniform eighty-to-ninety-eight-hour weeks later used in Plaintiffs' damages models. Tr. III 114:13–20.

26. The Court does not find that the existing payroll documents conclusively prove that every Plaintiff worked exactly forty or fewer hours in every week. Nor does the Court adopt Mijelum's categorical assertion that no Plaintiff ever exceeded forty hours in any week. Neither finding is necessary.

27. The issue is whether each Plaintiff proved, by credible evidence, that he performed uncompensated overtime and supplied a reliable basis to estimate the amount and extent of that work. On that issue, Plaintiffs retained the initial burden notwithstanding Mijelum's inadequate records.

## C. General credibility findings

28. Plaintiffs testified several years after the relevant seasons. None produced a personal calendar, diary, time sheet, preserved text-message history, location record, contemporaneous calculation, or other personal record showing his daily or weekly hours. Plaintiffs had no statutory duty to maintain Mijelum's time records, so the absence of personal records does not defeat a claim by itself; it left their retrospective estimates without contemporaneous corroboration.

29. Testimony based on memory can satisfy the FLSA in an appropriate case. Here, however, the Court does not find Plaintiffs' asserted fixed or average weekly schedules sufficiently

reliable when considered with the variations, contradictions, and omissions described below.

30. The amended complaint alleged a substantially uniform schedule for the group: 6:30 a.m. to 8:30 p.m., fourteen hours per day, six or seven days per week, over broad seasonal periods. ECF No. 22 ¶¶ 18–20.

31. The trial testimony did not establish that uniform schedule. Claimed starting times ranged from approximately 4:00 or 5:00 a.m. to 7:00 or 8:30 a.m. Claimed ending times ranged from approximately 5:00 p.m. to midnight. Some Plaintiffs described five-day weeks, others six-day weeks, and others occasional or regular Sunday work. The testimony changed by project, place, season, and witness.

32. Variation is not itself disqualifying; genuine work schedules often vary. The problem is that Plaintiffs' damages models converted variable and sometimes occasional schedules into fixed weekly averages applied across nearly every week of employment without establishing that the selected figures fairly represented the weeks at issue.

33. Much of the testimony described what "we" or "the group" did. Plaintiffs did not consistently identify which individuals were present on a particular crew, which days a particular Plaintiff worked, whether a Plaintiff rotated off a job, or whether a described event occurred throughout a season rather than on isolated occasions.

34. The FLSA did not require Plaintiffs to prove every workweek separately or to identify a particular representative week. The absence of more specific detail matters here because the witnesses' ranges varied materially, the claimed averages changed, and the evidence did not show why any selected schedule fairly described the remaining weeks of a season. Plaintiffs also did not correlate their estimates with project schedules, TxDOT

records, weather, payroll weeks, lodging locations, vehicle records, or another objective marker.

35. Expert or accountant testimony was not required. But no witness who prepared or independently validated the post-trial tables testified about the assumptions used, and the Court did not receive those tables as evidence subject to examination.

36. The evidence supports a finding that some Plaintiffs worked long and difficult days on some occasions. That finding does not establish that any Plaintiff worked the same long day six or seven days per week throughout an entire season.

37. The evidence did not persuade the Court that every minute between the selected departure and return times was spent performing compensable work. The testimony did not reliably separate time spent working from travel, waiting, meal periods, rotation periods, or other intervals, yet Plaintiffs' damages models treated the selected spans as continuous compensable work.

38. Employment dates also changed. Several dates in the complaints differed from dates in the trial testimony and post-trial calculations. Those differences altered the number of weeks to which Plaintiffs applied their selected average.

39. Claimed weekly pay also varied. Plaintiffs described different amounts at different times, delays in payment, mixed cash and check payments, and occasional unpaid periods. The post-trial tables selected one or more weekly amounts and extended them across periods that the testimony did not reconstruct week by week.

40. Several Plaintiffs could not explain their pleaded damages, did not know the hours underlying the exact figures, or testified that counsel calculated the amounts. Those admissions materially reduce the weight the Court gives to the claimed totals.

41. Plaintiffs generally did not complain to Leon or Luis Mucharraz, TxDOT personnel, or the Department of Labor during the relevant employment about unpaid overtime. Several Plaintiffs returned for another season, and some referred friends or relatives to Mijelum.

42. The Court does not treat silence, return employment, referrals, or expressions of gratitude as a waiver, estoppel, or legal bar. The Court gives those circumstances limited weight and considers them only with the entire record when evaluating whether Plaintiffs' later descriptions of pervasive, uniform, and extreme underpayment are reliable.

43. Contemporaneous messages included thanks to Mijelum, requests to return for another season, and referrals of other workers. Aurelio Carvajal, for example, thanked Leon Mucharraz after the 2021 season, indicated he was ready to return, invited him to a wedding, and sent information for additional prospective workers. Tr. III 130:1–135:3. Those communications contained no contemporaneous complaint about an eighty-to-ninety-hour schedule or unpaid overtime.

44. Plaintiffs alleged that Mijelum instructed some workers to provide false information during TxDOT interviews. Fredy Herrera Pico testified that Luis Mucharraz gave him a false name and told him to report forty hours and an hourly wage. Other Plaintiffs offered related accounts.

45. Luis Mucharraz expressly denied telling any worker to use a false name, conspiring with TxDOT, threatening a worker's job for telling the truth, directing workers to lie to TxDOT, or falsifying certified payroll. Tr. I 190:13–192:1.

46. Plaintiffs' post-trial brief states that "Luis never denied the coaching at trial." ECF No. 148 at 14. The trial transcript shows the opposite. The Court therefore does not rely on that characterization of the record.

47. The alleged coaching was disputed, was not corroborated by a contemporaneous instruction from Mijelum, and did not establish any Plaintiff's actual weekly hours. After weighing the conflicting testimony, the Court does not find the coaching allegations sufficiently reliable to prove either the claimed schedules or willful concealment of FLSA overtime.

48. Plaintiffs also relied on apparent errors in certified-payroll statements, including entries described as 401(k) deductions. Even assuming those entries were erroneous, they do not establish how many hours any Plaintiff worked in a particular week. The Court does not infer the truth of Plaintiffs' hour estimates from unrelated payroll-entry errors.

49. Evidence that Plaintiffs performed work outside the highway-maintenance description in H-2B materials does not establish that the work was uncompensated overtime. The scope of H-2B duties, the number of compensable hours, and payment of an overtime premium present distinct factual and legal questions.

50. The Court gives greater weight to Luis and Leon Mucharraz's testimony that schedules varied and that Mijelum attempted to limit work to approximately forty hours than to Plaintiffs' contention that a uniform extreme schedule persisted throughout the relevant seasons. The Court does not find the Mucharraz testimony flawless or the records complete, but it finds their account more consistent with the variable projects and the contemporaneous evidence.

51. The Court need not choose between a finding that every workweek was exactly forty hours and a finding that every workweek was eighty or more hours. Plaintiffs bore the burden to establish a credible, reasonable estimate. The evidence does not permit the

Court to identify a reliable middle ground without supplying assumptions that the witnesses did not prove.

## D. Plaintiff-specific findings

### 1. Jorge Eliecer Diaz Galvis

52. Diaz Galvis testified that he worked for Mijelum during part of the 2022 season. His testimony described an initial period at the yard, road-closure work, bridge work, travel, work involving animals, and occasional work at Luis Mucharraz's property. Tr. I 16:18–49:15.

53. His own account reflected materially different schedules. He described three days in the first week, four days in the second week, a later sixty-hour week, twelve-hour days, some Monday-through-Saturday weeks, and uncertain weekend work. Tr. I 23:1–29:21, 34:14–46:7.

54. Diaz Galvis could not identify how many weekends he worked and described them only as "several." Tr. I 45:12–20. He did not identify representative dates or explain why any selected week represented the remaining months.

55. He described weekly pay that changed from $300 to $400 to $500 and, later, sometimes $550 or $600. His testimony did not identify the amount received in each workweek.

56. Plaintiffs' post-trial model treated the first two weeks separately but then applied sixty hours per week and $500 in pay to approximately 21.428 remaining weeks. ECF No. 148 at 30–31. The testimony did not establish that the later weeks followed one sixty-hour schedule or one $500 pay pattern.

57. Plaintiffs' pretrial Model B sought $31,125.35 for Diaz Galvis, while the post-trial model sought $37,260.41. ECF No. 139-1 at 7; ECF No. 148 at 23, 31. The material reduction

shows that the result depends substantially on the assumptions selected for hours, weeks, and pay.

58. The Court finds that Diaz Galvis did not prove uncompensated overtime or its amount and extent through a just and reasonable inference.

**2. Juan David García Rodríguez**

59. García Rodríguez testified that he worked in 2021 from approximately May through December. He described an initial period at the yard, road-closure work, mowing, and cable work, with different locations and travel requirements. Tr. I 50:18–77:8.

60. He testified that some days began around 4:00, 5:00, 6:00, or 7:00 a.m. and sometimes ended around 9:00 p.m. He did not establish that one start-and-end span occurred every day or every week throughout the season.

61. García Rodríguez acknowledged that he had no record of his hours and relied on memory. Tr. I 59:3–60:18.

62. He eventually described approximately eighty to ninety hours per week, but he did not identify a representative week, the number of weeks at each level, or the workweek-specific facts supporting that range. Tr. I 74:24–75:13.

63. He testified that he was generally paid $500, with one $300 payment and three $600 payments. He did not reconstruct the remaining pay periods.

64. The post-trial model assigned eighty hours to thirty-two weeks, assumed twenty-eight weeks at $500, one week at $300, and three weeks at $600, and produced the exact figure $44,444.00. ECF No. 148 at 34–35. The testimony did not establish those week assignments.

65. The post-trial figure also differed from the original pleaded total and the pretrial calculation. The changing exact totals were generated by counsel's model, not by García Rodríguez's own calculation.

66. The Court finds that García Rodríguez did not prove uncompensated overtime or its amount and extent through a just and reasonable inference.

### 3. Aurelio Tarazona Carvajal

67. Carvajal worked during portions of 2021 and 2022. He testified about yard work, highway projects, road closures, guardrail or cable work, and work at Luis Mucharraz's property. Tr. I 78:5–114:23.

68. On direct examination, Carvajal described long days and generally six days per week, plus Sundays when required. His testimony nevertheless acknowledged variable starting and ending times depending on the project and location.

69. On cross-examination, Carvajal testified that he worked only two Sundays in 2021 and two Sundays in 2022—four Sundays total. Tr. I 110:25–111:7.

70. Carvajal could not identify the total number of uncompensated hours, did not know the set number of hours by which he claimed underpayment, and agreed that his start and end times varied by week and location. Tr. I 111:9–113:6.

71. He had no texts, photographs, calendar, or other contemporaneous record of his hours and agreed that his claim depended on memory. Tr. I 113:7–17.

72. Carvajal did not complain to government personnel or the Department of Labor during the relevant employment. Tr. I 113:18–114:3.

73. He could not explain how the pleaded amount of $77,778.16 was calculated. In attempting to explain it, he referred not only to unpaid hours but also to expenses

associated with travel from Colombia. Tr. I 114:4–24. Travel expenses do not establish overtime hours.

74. Carvajal returned to Mijelum in 2022 after the first season, referred Elkin Pinto, asked about returning, and sent information for other prospective workers. Those actions do not bar his claim, but they reduce the persuasive force of his later assertion that the same extreme schedule and underpayment continued uniformly throughout both seasons.

75. Plaintiffs' post-trial model assigned eighty-four hours to every week and an upper bound of ninety-one hours by adding average Sunday work to every week. ECF No. 148 at 24–25. The eighty-four-hour figure uses the high end of a claimed twelve-to-fourteen-hour range, and the ninety-one-hour figure cannot be reconciled with testimony of four Sundays over two seasons.

76. The Court finds that Carvajal did not prove uncompensated overtime or its amount and extent through a just and reasonable inference.

**4. Elkin Humberto Gómez Pinto**

77. Gómez Pinto testified that he worked from May 12 to September 3, 2022. His work included an initial Odessa project, lane-closure work, yard work, work in Midland, and work in El Paso. Tr. II 4:20–24:1.

78. His testimony reflected changing schedules. He described two or three weeks in Odessa, rotation on lane closures that could involve zero to three days in a week, and later work in other locations. He did not show that one schedule governed the full employment period.

79. Gómez Pinto estimated "about 80 hours, more or less" per week. Tr. II 18:12–16. He did not identify a representative week or the number of weeks at that level.

80. He testified that he worked approximately sixteen weeks, received $600 for fourteen weeks, and was not paid for the first and last weeks. He did not produce a record of the payments or identify the dates and hours underlying each alleged unpaid period.

81. Gómez Pinto kept no record of his hours and relied on memory. Tr. II 21:11–16. He preserved no relevant phone records and did not complain to TxDOT, the Department of Labor, Leon Mucharraz, or Luis Mucharraz during the employment. Tr. II 21:22–23:22.

82. He estimated his underpayment at approximately $20,000, while the amended complaint demanded $25,613.13 and the post-trial model demanded $22,413.11. The discrepancies are material because the differing figures rest on different assumptions rather than new contemporaneous evidence.

83. The post-trial model assigned eighty hours to every week, treated 2.286 weeks as entirely unpaid, and applied selected rates and pay assumptions across the period. ECF No. 148 at 27–28. The testimony did not establish those assumptions with sufficient reliability.

84. The Court finds that Gómez Pinto did not prove uncompensated overtime or its amount and extent through a just and reasonable inference.

**5. Fredy Alexander Herrera Pico**

85. Herrera Pico testified about work during portions of 2021 and 2022. He described yard work, road-maintenance projects, lane closures, work in Odessa, and occasional Sunday work. Tr. II 24:15–53:21.

86. His hour estimates varied. He described sixty to seventy hours at one point, seventy to ninety at another, thirteen or fourteen hours per day, six or seven days per week, and a purported average somewhere between seventy and ninety. Tr. II 31:16–20, 43:25–45:14.

87. Herrera Pico kept no personal record of his hours. Tr. II 48:8–14.

88. When asked what he used to estimate his days and damages, Herrera Pico referred not only to hours and overtime but also to alleged mistreatment. Tr. II 48:15–20. Mistreatment is not a measure of overtime hours.

89. Herrera Pico acknowledged that employment dates in the pleadings were wrong and that his calculations were not exact. Tr. II 51:3–52:6.

90. His claimed damages changed from the complaint's $81,281.12, to approximately $35,000 for each year, to approximately $80,000, and then to approximately $70,000 or $75,000. Tr. II 47:23–48:7, 51:17–53:12.

91. Herrera Pico returned for the 2022 season after the alleged 2021 underpayment. He explained that he needed employment. The Court accepts economic need as a plausible reason to return, but the return does not corroborate the fixed eighty-five-hour schedule later assigned to every week.

92. The post-trial model used eighty-five hours every week in both seasons, an average $550 payment for most of 2021, and $600 for every week in 2022. ECF No. 148 at 28–30. His testimony did not establish that each week followed those assumptions.

93. Plaintiffs' post-trial brief also relied on Herrera Pico's coaching allegation and incorrectly stated that Luis Mucharraz did not deny it. For the reasons already stated, the Court does not credit that allegation sufficiently to establish hours or concealment.

94. The Court finds that Herrera Pico did not prove uncompensated overtime or its amount and extent through a just and reasonable inference.

## 6. Wilson Fabián Peña Castillo

95. Peña Castillo testified about three separate seasons—2019, 2021, and 2022—even though the damages claim concerns 2021 and 2022. Tr. II 55:4–87:21.

96. His testimony showed difficulty separating the seasons. At one point he initially identified 2020, then corrected the year to 2021. He also said he arrived in late March or early April 2021, then agreed with a prior statement that he was not working before May 24, 2021. Tr. II 63:24–66:19.

97. Peña Castillo described starts around 5:30 or 6:00 a.m. and endings around 8:30 or 9:00 p.m., but he also described different tasks, locations, travel, and project conditions. Tr. II 67:1–70:6.

98. He testified that some weeks involved six days and some seven, and he identified one Sunday-through-Sunday week. That testimony did not establish seven-day work every week.

99. When counsel asked him to calculate a six-day week, Peña Castillo answered "maybe 85 to 90 or 100." Tr. II 70:5–24. That range is too broad and uncertain to establish a fixed weekly average over two seasons without additional proof.

100. His pay testimony also varied, including $400, $500, $600, and $650, with both cash and check payments and no week-specific reconstruction.

101. Peña Castillo returned to Mijelum for multiple seasons and participated in recruiting or referring others. As with the other Plaintiffs, this conduct is not a legal bar but is relevant to the credibility of his retrospective account.

102. The post-trial model assigned 87.75 hours to every week in both 2021 and 2022 and applied fixed pay assumptions across more than fifty-five weeks. ECF No. 148 at 32–33. The testimony did not establish 87.75 as a reliable representative average for every week in two different seasons.

103.    The pleaded total, pretrial Model B total, and post-trial total for Peña Castillo materially differed. ECF No. 22 at 8-9; ECF No. 139-1 at 7; ECF No. 148 at 23. The differing results reflect changing assumptions, not newly discovered contemporaneous records.

104.    The Court finds that Peña Castillo did not prove uncompensated overtime or its amount and extent through a just and reasonable inference.

**7. Eduar Hurtado Garcia**

105.    Hurtado Garcia testified that he worked from May 12 to September 10, 2022. The amended complaint and earlier damages model used September 23, 2022. Tr. III 24:21–25; ECF No. 22 at 7.

106.    He described approximately two weeks in Odessa, roughly a month at the yard, highway work, and work at Luis Mucharraz's property. His testimony therefore involved different tasks and locations over the four-month period. Tr. III 28:2–33:25.

107.    Hurtado Garcia described twelve-to-fourteen-hour days and six or sometimes seven days per week. On direct examination, counsel then characterized a "typical" week as approximately eighty hours based on six days. Tr. III 36:12–37:25.

108.    On cross-examination, Hurtado Garcia said his damages involved an average of eighty to ninety hours but admitted that he did not have the exact calculation. When asked for the amount, he answered, "The amount the attorney said." Tr. III 41:1–14.

109.    Hurtado Garcia agreed that counsel alone calculated the exact $25,613.13 figure. Tr. III 42:9–11.

110.    He agreed that his evidence of underpayment depended on memory and that he had no notes, diaries, or calendars of his hours. Tr. III 42:15–18, 43:4–6.

111.    Hurtado Garcia did not complain to a government employee or TxDOT during the employment. He explained that he stayed because he needed to send money to Colombia. Tr. III 42:1–6, 42:21–43:6.

112.    Plaintiffs' pretrial Model B used ninety-one hours per week and a period through September 23; the post-trial model used eighty hours per week and a period ending September 10. ECF No. 139-1 at 5; ECF No. 148 at 23, 25–26.

113.    The post-trial adjustment is not merely arithmetic. It confirms that neither the duration nor the weekly-hour input was established by stable, credible evidence.

114.    The Court finds that Hurtado Garcia did not prove uncompensated overtime or its amount and extent through a just and reasonable inference.

### 8. Jairo Andrés Ardila Peña

115.    Ardila Peña's operative pleading asserted work in 2022; his testimony concerned work in 2021. ECF No. 22 at 8; ECF No. 117 at 1–2.

116.    The Court denied leave to amend, excluded the 2021 claim from the final pretrial order, and granted judgment on partial findings against Ardila Peña at trial. ECF No. 117 at 7–9; Tr. III 183:2–3.

117.    Ardila Peña therefore takes nothing, and no finding concerning the amount of his alleged 2021 overtime is necessary.

### E. Plaintiffs' damages models

118.    Plaintiffs' post-trial brief requests $375,308.54 in unpaid wages and the same amount in liquidated damages, for a total of $750,617.08. ECF No. 148 at 23.

119.    The aggregate expressly includes $51,270.72 for Ardila Peña despite the Rule 52(c) judgment against him. The Court therefore cannot adopt the aggregate as stated, even before examining the remaining assumptions.

120.    Before trial, Plaintiffs presented two materially different models. Their primary pretrial Model B sought approximately $410,440.30 in unpaid overtime and $820,880.60 after doubling; Model A sought approximately $369,400.37 and $738,800.74. ECF No. 139-1 at 3–4.

121.    After trial, Plaintiffs did not carry those totals forward and instead requested $375,308.54 in unpaid wages. The changes were substantial for several Plaintiffs, including Diaz Galvis, Hurtado Garcia, Herrera Pico, and Ardila Peña.

122.    The damages tables were prepared by counsel after the witnesses testified. They were not admitted into evidence and do not independently establish hours worked or compensation received.

123.    A spreadsheet can accurately perform arithmetic on selected inputs, but mathematical precision does not establish the factual accuracy of the inputs.

124.    The post-trial tables select employment dates, hourly rates, weekly pay, and weekly hours from different portions of the record, then extend those selections over broad periods. The testimony did not establish that the selected combination accurately described the asserted periods.

125.    The models frequently use the high end or midpoint of a broad range and label it "conservative." For example, Carvajal's model uses fourteen hours rather than the lower end of his twelve-to-fourteen-hour range; Herrera Pico's uses eighty-five hours each week from a seventy-to-ninety-hour range; and Peña Castillo's uses 87.75 hours each

week from testimony that included "maybe 85 to 90 or 100." The label does not make an assumption reliable.

126.    The models do not consistently account for partial weeks, weeks affected by weather or equipment, project rotations, days off, illness, holidays, travel differences, or the fact that some Plaintiffs described no highway work on particular days.

127.    The models do not reliably distinguish time spent performing highway, yard, or property work from travel, waiting, meal periods, or other intervals. They instead convert selected daily spans into continuous work hours.

128.    The models assume weekly pay amounts for weeks in which witnesses could not identify what they received. They also treat some weeks as unpaid based on generalized recollection rather than a reliable week-specific record.

129.    The Court need not decide whether every hourly-rate or legal-formula choice in the models is correct. Even assuming the chosen rates and formula could be legally proper, the models fail because the hours, weeks, and payment inputs are not established by credible evidence.

130.    The Court cannot cure the deficiencies by selecting its own average. Any such number would reflect judicial guesswork rather than a just and reasonable inference grounded in the evidence.

131.    The Court therefore gives no weight to the aggregate or per-Plaintiff damage totals except as statements of the relief Plaintiffs request.

**F. Willfulness**

132.     Because Plaintiffs did not prove an underlying FLSA overtime violation, a willfulness finding is unnecessary to the judgment. The Court nevertheless makes alternative findings to complete the record.

133.     Leon Mucharraz knew in general that the FLSA requires overtime compensation when an employee works more than forty hours. General knowledge of the statute does not establish that Mijelum knew a particular Plaintiff worked uncompensated overtime.

134.     Luis and Leon Mucharraz testified that Mijelum attempted to avoid overtime and used yard or property work to bring workers to approximately forty hours when highway work fell short. The Court credits that testimony as to Mijelum's understanding and intent.

135.     Plaintiffs did not make a contemporaneous overtime complaint to Mijelum or identify a prior Department of Labor determination that Mijelum's pay practices violated the FLSA. The evidence did not show that Mijelum continued a specific pay practice after receiving authoritative notice that the practice violated the FLSA.

136.     Mijelum's failure to retain complete and accurate records was serious. On this record, however, the Court finds deficient administration and, at most, negligence—not knowledge or reckless disregard of a proven overtime violation.

137.     Plaintiffs' evidence concerning work outside the H-2B job description does not prove that Mijelum knew it was violating the FLSA overtime provision. A violation or possible violation of a separate regulatory or contractual requirement does not establish the mental state required by 29 U.S.C. § 255(a).

138. The Court does not credit the allegations of false-name coaching, threats, or instructions to conceal overtime for the reasons stated above. Those disputed allegations therefore do not establish willfulness.

139. The Court credits Luis Mucharraz's testimony that he discarded temporary notes after entering information into the payroll system, not to hide overtime or in anticipation of litigation. Tr. I 182:8–185:1.

140. The Court also credits the explanation that cash payments arose from delays in obtaining Social Security numbers and ended when workers entered the payroll system. The method of payment does not establish reckless disregard.

141. Plaintiffs did not prove that Mijelum knew or showed reckless disregard for whether its conduct violated the FLSA. If any violation had been proved, it would not have been willful.

## CONCLUSIONS OF LAW

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the FLSA. The parties consented to the jurisdiction of the United States Magistrate Judge under 28 U.S.C. § 636(c).

2. Under Federal Rule of Civil Procedure 52(a), the Court must find the facts specially and state its legal conclusions separately after a bench trial. Under Rule 52(c), the Court may enter judgment against a party on a claim after that party has been fully heard, and a judgment on partial findings must be supported by findings and conclusions. Fed. R. Civ. P. 52(a), (c).

3. In a bench trial, the Court weighs the evidence, draws reasonable inferences, and determines credibility. The Court is not required to view the evidence in Plaintiffs' favor,

as it was required to do when considering summary judgment. *See* Fed. R. Civ. P. 52(a)(6); *Anderson v. City of Bessemer City*, 470 U.S. 564 (1985).

4. The Court's summary-judgment rulings established that Plaintiffs were Mijelum's employees and that FLSA coverage applies. Those matters are not reconsidered.

5. Section 207(a)(1) requires an employer to compensate a covered employee at not less than one and one-half times the employee's regular rate for hours worked beyond forty in a workweek. 29 U.S.C. § 207(a)(1).

6. Each Plaintiff retained the burden to prove by a preponderance of the evidence that he performed work for which Mijelum failed to compensate him in accordance with the FLSA and to establish the amount of overtime owed. *Johnson v. Heckmann Water Resources (CVR), Inc.*, 758 F.3d 627 (5th Cir. 2014).

7. When an employer's records are inaccurate or incomplete, an employee satisfies his initial burden only if he proves that he performed work for which he was improperly compensated and produces sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

8. If the employee makes that showing, the burden shifts to the employer to produce evidence of the precise amount of work or evidence that negates the reasonableness of the employee's inference. If the employer fails, the Court may award an approximation. *Id.* at 687–88.

9. The *Mt. Clemens* standard relaxes the employee's evidentiary burden; it does not eliminate it. A plaintiff must offer more than unsubstantiated assertions, and the evidence must provide a sufficient basis to calculate the hours for that employee. *Flores v. FS*

*Blinds, L.L.C.*, 73 F.4th 356, 362–64 (5th Cir. 2023); *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005).

10. Testimony concerning a usual schedule or a reliable average can satisfy the standard when the factfinder credits it. The rule does not require the Court to accept an average that it finds internally inconsistent, unsupported, or unrepresentative. This conclusion rests on the Court's credibility findings after trial; it does not impose a categorical requirement of week-by-week proof. *See Flores*, 73 F.4th at 363–64; *Olibas v. Barclay*, 838 F.3d 442, 450–51 (5th Cir. 2016).

11. Representative evidence may support an inference for other periods or employees only when the evidence is shown to be fairly representative and could sustain the claim in an individual action. *U.S. Department of Labor v. Five Star Automatic Fire Protection, L.L.C.*, 987 F.3d 436, 440–42 (5th Cir. 2021); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454–59 (2016).

12. Mijelum's inadequate records do not create liability by themselves and do not shift the burden before a Plaintiff supplies a credible just-and-reasonable inference. The Court's prior ruling that the *Mt. Clemens* framework applies did not predetermine that Plaintiffs satisfied the employee-side showing. The Court may not replace missing records with speculation.

13. For the reasons stated in the findings, Tarazona Carvajal, Hurtado Garcia, Gómez Pinto, Herrera Pico, Diaz Galvis, Peña Castillo, and García Rodríguez did not carry their initial burden. The Court does not reject their proof because it lacked mathematical or week-by-week precision. It rejects the asserted averages because, after weighing the complete trial

record, the Court does not find them credible as usual or fairly representative schedules for the periods claimed.

14. Alternatively, even if any remaining Plaintiff's generalized testimony satisfied the minimal threshold required to shift the burden, Mijelum negated the reasonableness of applying the claimed averages throughout the asserted periods. The evidence showed variable projects, schedules, work locations, rotations, interruptions, payment amounts, and partial weeks, as well as contemporaneous records inconsistent with the uniform extreme schedules.

15. The Court may award an approximation after a credible inference has been established; it may not invent the predicate facts. Because the evidence does not support a reliable estimate, the Court cannot award nominal, compromise, or averaged overtime damages.

16. Counsel's post-trial calculations do not constitute evidence and cannot substitute for proof of the factual inputs. The apparent precision of the tables does not cure the unreliability of the hours, weeks, and payment assumptions.

17. Ardila Peña's operative claim concerned 2022, while his proof concerned 2021. The Court denied amendment, excluded the 2021 claim from the final pretrial order, and entered judgment against him under Rule 52(c). Ardila Peña takes nothing.

18. Section 211(c)'s recordkeeping requirement does not create a private damages action for employees. The recordkeeping deficiency affects the evidentiary framework under *Mt. Clemens* but does not provide an independent basis for recovery. *Castillo v. Givens*, 704 F.2d 181, 198 n.41 (5th Cir. 1983).

19. Alleged violations of H-2B job-duty restrictions, alleged contract violations, cash payment, or unrelated payroll errors do not substitute for proof that a Plaintiff worked overtime for which Mijelum failed to pay the required premium.

20. Because no Plaintiff proved a violation of § 207(a)(1), no Plaintiff is entitled to unpaid overtime compensation under § 216(b).

21. Section 216(b)'s additional equal amount as liquidated damages arises only after unpaid minimum wages or overtime compensation are established. Because Plaintiffs proved no unpaid overtime, they are not entitled to liquidated damages.

22. The Court does not revisit its prior disposition of Mijelum's 29 U.S.C. § 260 good-faith defense. That defense is unnecessary to the judgment because Plaintiffs failed to prove liability.

23. A cause of action under the FLSA ordinarily must be commenced within two years after accrual; the period extends to three years only for a willful violation. 29 U.S.C. § 255(a).

24. A violation is willful only when the employer knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. Mere negligence, an unreasonable but nonreckless interpretation, or imperfect recordkeeping does not suffice. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).

25. Plaintiffs bore the burden to prove willfulness. They did not prove that Mijelum knew it was failing to pay overtime to any Plaintiff or recklessly disregarded that possibility.

26. If any overtime violation were otherwise found, the ordinary two-year limitations period would apply. Because this action commenced on June 27, 2023, claims accruing before June 27, 2021, would be barred.

27. Because Plaintiffs failed to prove compensable overtime, the Court does not decide whether Plaintiffs' proposed weekly-wage formulas, selected regular rates, or time-and-one-half calculations would govern any hypothetical workweek.

28. Because Plaintiffs recover no judgment, they are not prevailing employees entitled to attorney's fees or costs under 29 U.S.C. § 216(b).

29. Plaintiffs are not entitled to prejudgment interest because they recover no unpaid wages. No issue concerning the election between liquidated damages and prejudgment interest remains.

30. Final judgment should be entered that Jairo Andrés Ardila Peña takes nothing pursuant to the Court's Rule 52(c) ruling and that Aurelio Tarazona Carvajal, Eduar Hurtado Garcia, Elkin Humberto Gómez Pinto, Fredy Alexander Herrera Pico, Jorge Eliecer Diaz Galvis, Wilson Fabián Peña Castillo, and Juan David García Rodríguez take nothing on their FLSA claims.

31. Plaintiffs' claims should be dismissed with prejudice, and all relief not expressly granted should be denied.

32. To the extent a finding of fact is more properly characterized as a conclusion of law, the Court adopts it as a conclusion. To the extent a conclusion of law is more properly characterized as a finding of fact, the Court adopts it as a finding.

Respectfully submitted,

**JOE A. SPENCER JR., ESQ.**
**ATTORNEY & COUNSELOR AT LAW**
1009 Montana Ave.
El Paso, TX 79902
Tel. (915) 532-5562
Fax. (915) 532-7535

/s/ Joe A. Spencer
JOE A. SPENCER
Texas Bar No. 18921800
joe@joespencerlaw.com

and

Valenzuela Law Firm
701 Magoffin Avenue
El Paso, Texas 79901
(915) 209-2719
(915) 493-2404 fax

/s/ Felix Valenzuela
State Bar No. 24076745
felix@valenzuela-law.com

***Attorneys for Defendant***

## CERTIFICATE OF SERVICE

On July 14, 2026, a true and correct copy of this document served on all counsel of record

via the Court's electronic filing system.

Adam Poncio. Esq.
Alan Braun, Esq.
PONCIO LAW OFFICES
A Professional Corporation
5410 Fredericksburg Road, Suite 109
San Antonio, Texas 78229-3550
Telephone: (210) 212-7979
Facsimile: (210) 212-5880
salaw@msn.com
abraun@ponciolaw.com

*/s/ Joe A. Spencer*
**Joe A. Spencer**