**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **AURELIO TARAZONA CARVAJAL, EDUAR HURTADO GARCIA, ELKIN HUMBERTO GÓMEZ PINTO, FREDY ALEXANDER HERRERA PICO, JAIRO ANDRÉS ARDILA PEÑA, JORGE ELIECER DIAZ GALVIS, WILSON FABIAN PEÑA CASTILLO, JUAN DAVID GARCÍA RODRIGUEZ,** | § | |
| ***Plaintiffs*,** | § | **EP-23-CV-00245-RFC** |
| **v.** | § | |
| **MIJELUM, L.L.C., LUIS MUCHARRAZ, AND LEON MUCHARRAZ,** | § | |
| ***Defendant.*** | § | |

**OPINION**

Plaintiffs Tarazona Carvajal, Hurtado Garcia, Gómez Pinto, Herrera Pico, Diaz Galvis, Peña Castillo, and García Rodriguez (collectively, "Plaintiffs") bring this action against Mijelum, L.L.C. ("Mijelum"), alleging violations of the Fair Labor Standards Act ("FLSA").

## I. PROCEDURAL BACKGROUND

Plaintiffs initiated this action on June 27, 2023. Pls.' Orig. Compl., ECF No. 1. In their now-operative amended complaint, Plaintiffs brought a cause of action under the FLSA, in which they sought "[o]vertime pay, time and one half pay, for all hours worked while employed by [Mijelum] that were in excess of 40 hours per week and for all regular time and/or overtime hours worked 'off the clock' during the business day." *See* Pls.' First Am. Compl. 13, ECF No. 22 [hereinafter "Am. Compl."]. They also sought attorneys' fees, court costs, expert fees, liquidated

damages, and pre and post judgment interest. *Id.* In response, Mijelum set forth several affirmative defenses and a counterclaim. Defs' Ans., Defenses, Affirmative Defenses, & Counterclaim Pls' First Am. Compl., ECF No. 23. On June 10, 2025, this Court granted summary judgment as to Mijelum's counterclaim, as well as to Mijelum's "affirmative defenses, except for the defense relating to willfulness and the statute of limitations." Memorandum Opinion & Order 26, ECF No. 79.

The Court held a three-day bench trial, beginning on May 26, 2026. *See* Tr. of Bench Trial, Day 1, ECF No. 150 [hereinafter "Tr. I"]; Tr. of Bench Trial, Day 2, ECF No 151 [hereinafter "Tr. II"]; Tr. of Bench Trial, Day 3, ECF No. 153 [hereinafter "Tr. III"]. During trial, the Court heard the video depositions of each Plaintiff, as well as the live testimony of Leon and Luis Mucharraz. The Court granted partial judgment in favor of Mijelum under Federal Rule of Civil Procedure 52(c), as to the claims brought by Plaintiff Ardila Peña.

## II. LEGAL STANDARD

### *1. FLSA Claims*

Under the FLSA, a covered employee must be paid wages at a minimum rate of $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C). Further, any covered employee who works more than 40 hours in a workweek is entitled to overtime compensation at a rate of no less than one and one-half times the employee's regular rate for each hour worked over 40. *See id.* at § 207(a)(1). Where an employer violates these provisions, its employee may bring a private action against the employer to recover unpaid overtime or minimum wages, liquidated damages, reasonable attorneys' fees, and the costs of the action. *Id.* at § 216(b).

***2.* Mt. Clemens *Burden-Shifting Framework***

"[T]ypically, a plaintiff who brings an unpaid-wages claim under the FLSA 'has the burden of proving that he performed work for which he was not properly compensated.'" *U.S. Dep't of Lab. v. Five Star Automatic Fire Prot., LLC*, 987 F.3d 436, 441–42 (5th Cir. 2021) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946)) (citing 29 U.S.C. § 216(b)). However, in *Mt. Clemens*, the Supreme Court introduced a more "lenient standard rooted in the view that an employer shouldn't benefit from its failure to keep required payroll records, thereby making the best evidence of damages unavailable." *Hobbs v. EVO Inc.,* 7 F.4th 241, 257 (5th Cir. 2021) (quoting *Five Star Automatic Fire Prot.*, 987 F.3d at 440). Where "the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitute" the employee "carrie[s] out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Five Star Automatic Fire Prot., LLC*, 987 F.3d at 442 (quoting *Mt. Clemens Pottery Co.*, 328 U.S. at 687). Applying this standard, courts may "accept estimates of weekly … hours derived from plaintiffs' testimony as adequate evidence of damages." *Hobbs*, 7 F.4th at 257 (citing *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1264 (5th Cir. 1986)).

Where a plaintiff meets this burden, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens Pottery Co.*, 328 U.S. at 687–88. Should the employer fail to produce this evidence, "the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688.

***3. Non-Jury Trial***

"In an action tried on the facts without a jury," the Court "find[s] the facts specially and state[s] its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). In doing so, the Court must weigh the evidence and make credibility determinations. *See Dickerson v. Lexington Ins. Co.,* 556 F.3d 290, 306 (5th Cir. 2009); *Nolan v. Golden Rule Ins. Co.,* 171 F.3d 990, 994 (5th Cir. 1999)).

## III. FINDINGS OF FACT

The following section constitutes the Court's findings of fact. These findings are drawn from the evidence and testimony presented at trial.[1]

### A. FLSA Coverage

Mijelum is a limited liability company owned and managed by two brothers – Leon Mucharraz and Luis Mucharraz. *See* Tr. III at 124:1–4; Ex. 96. Mijelum's did more than $500,000 in business in both 2021 and 2022. *See* Tr. III at 166:21–167:15.

As part of its business operations in 2021 and 2022, Mijelum performed highway-maintenance work under contracts with the Texas Department of Transportation ("TxDOT"). *See* Exs. 59–70. Its TxDOT projects included highway maintenance in several West Texas counties. *See id.* Beyond those projects, workers performed maintenance and other manual labor at Mijelum's yard in Alpine, Texas, as well as at a property associated with Luis Mucharraz. *See* Tr. I at 96:11–14; Tr. II at 85:19–22; Tr. III at 31:19–32:20.

During the 2021 season, Plaintiffs Tarazona Carvajal, Herrera Pico, Peña Castillo, Ardila Peña, and García Rodríguez were among the highway maintenance workers hired to carry out Mijelum's projects. *See* Tr. I at 55:1–5, 78:22–23; Tr. II at 25:12–13; Exs. 75, 78. In the 2022 season, Tarazona Carvajal, Herrera Pico, and Peña Castillo continued their work with Mijelum,

---

[1] All findings of fact that are more properly considered to be conclusions of law are also adopted by the Court as conclusions of law.

joined by Diaz Galvis, Gómez Pinto, Hurtado Garcia. Tr. I at 22:24–25, 78:22–23; Tr. II at 5:7–9, 25:12–13; Tr. III at 24:23–25; Ex. 78.

Leon and Luis Mucharraz served as Mijelum's sole supervisors. *See* Tr. III at 124:1–4. In these roles, they (1) possessed the power to hire Plaintiffs, *see* Tr. I at 20:8–10; Tr. III at 26:21–24; (2) supervised and controlled Plaintiffs' work schedules and conditions of employment, *see* Tr. I at 63:1–6; Tr. III at 31:3–7; (3) determined Plaintiffs' pay rate and method of payment, Tr. III at 55:25–56:2, 56:20–23, 111:1–9; and (4) were responsible for maintaining employment records, *see id.* at 143:4–15. Thus, at all relevant times, Defendants employed multiple employees who were engaged in commerce. *See Overstreet v. N. Shore Corp.*, 318 U.S. 125, 129–30 (1943) (holding persons who are engaged in maintaining and repairing roadways and highways are "engaged in commerce").

**B. Accuracy and Adequacy of the Records**

Mijelum did not record any cash payments made to Plaintiffs, Tr. III at 49:14–18, and discarded the notes they used to calculate the hours Plaintiffs worked, Tr. I at 147:15–17. Indeed, Mijelum maintained no timekeeping records for some Plaintiffs. *See, e.g.,* Ex. 73, 77. The records Mijelum did keep provide "no way of verifying that [Plaintiffs] were paid at the proper rate of pay for all the hours worked," *see* Tr. III at 49:19–24, and cannot be relied upon to reflect the full number of hours worked by any Plaintiff.

Accordingly, the Court finds the records are inadequate and inaccurate.

**C. FLSA Violations**

***1. General Findings Regarding Hours Worked***

Because Mijelum failed to maintain adequate time records and no Plaintiff kept personal records of hours worked, the Court's determinations necessarily rest largely on witness testimony.

The Court must therefore assess the competing testimony of Leon and Luis Mucharraz and the Plaintiffs to determine whether the proposed inferences are reasonable. The Court finds the Plaintiffs' testimony concerning their work hours more credible than that of Leon or Luis Mucharraz. Accordingly, where the testimony conflicts, the Court generally affords greater weight to the Plaintiffs' accounts.

Although their individual estimates vary, the Court generally finds these variations are the justifiable result of Plaintiffs' good-faith effort to recount their hours from memory, rather than an attempt to overstate their claims. Moreover, such variations make practical sense given that Plaintiffs worked at different times, in different locations, or on different assignments. Even with these variations, Plaintiffs' cumulative testimony regarding their daily work assignments supports a finding that Plaintiffs were regularly required to work long days without regular lunch breaks. *See* Tr. I at 104:9–14; Tr. II at 20:8–15, 49:19–24; Tr. III at 41:17–23.

The types of work Plaintiffs performed generally fall into three categories: non-highway work, local highway work, and out-of-town highway work. The Court addresses each category in turn.

*a. Non-Highway Work*

Plaintiffs performed "non-highway" work at Mijelum's Alpine yard and at property owned by Luis Mucharraz. Plaintiffs' yard assignments varied substantially and included yard maintenance, animal care, vehicle repair, and construction work. *See, e.g.,* Tr. I at 23:1–24:21, 28:25–29:6; Tr. III at 30:12–24. Plaintiffs also performed construction work at Luis Mucharraz's property. *See, e.g.,* Tr. I at 27:1–4, 96:11–17.

Luis and Leon Mucharraz stated they offered Plaintiffs non-highway work when TxDOT work was unavailable, so that workers could complete a 40-hour week. *See* Tr. I at 141:25–142:14,

144:5–11; Tr. III at 152:21–152:3. The Court finds, however, Plaintiffs regularly performed these non-highway assignments in addition to working several hours of local highway work. *See e.g.,* Tr. I at 28:20–24, 61:24–62:6, 96:24–97:9; Tr. II at 74:6–10.

When yard work or work at Luis Mucharraz's property constituted the primary assignment, Plaintiffs' workdays generally ranged from approximately 12 to 15 hours. *See e.g.,* Tr. I at 26:24–27:7 (Diaz Galvis testifying when he worked on Luis Mucharraz's property, he worked "all the time in the day, from 7 a.m. to 8 p.m."); *id.* at 59:3–5, 60:1–8 (Rodriguez testifying he worked from 6:00 a.m. to 9:00 p.m. in the yard); id. at 87:1–5 (Tarazona Carvajal testifying he worked from 6:00 or 6:30 a.m. to 8:00 or 9:00 p.m. in the yard); Tr. II at 40:8–13 (Pico testifying he worked 13 to 14 hours per day in the yard in early 2022); Tr. III at 32:12–24 (Hurtado Garcia testifying he worked 12 to 14 hours per day while working on Luis Mucharraz's property).

Taken as a whole, the Court finds the combined demands of non-highway work frequently required more than eight hours in a day, and at times required Plaintiffs to work as much as fifteen hours of work each day.

*b. Local Highway Work*

When completing "local highway" projects, Plaintiffs stayed overnight in lodgings Mijelum provided for them in Alpine and drove out to jobsites to perform road closures, road maintenance, and other highway services.

In days in which they performed local highway work, Plaintiffs first reported to the yard to gather equipment and prepare the company vehicles before traveling in those vehicles to the jobsite. *See, e.g.,* Tr. I at 27:21–28:19, 61:20–62:10. At the jobsite, they worked alongside State employees for seven to eight hours, *see id.* at 27:14–28:3, 28:20–24, 63:14–17; Tr. II at 14:16–21, generally arriving early to set up and remaining after the state employees left to remove equipment,

*see, e.g.,* Tr. I at 61:20–62:10, 63:18–23. They then returned to the Mijelum office's yard to perform additional non-highway work. *See e.g., id.* at 28:20–24, 61:20–62:6; *Tr. II* at 74:6–10. Considering the volume and nature of the work assigned to Plaintiffs, together with the time required to complete the various tasks, the Court finds that local-highway workdays could reasonably extend to as many as 15 hours. *See Tr. I* at 61:20–22, 59:3–5, 60:6–8, 61:3–5 (together, García Rodriguez testifying he worked from 6:00 a.m. to 9:00 p.m. on road closures).

*c. Out-of-Town Highway Work*

The Court uses the phrase "out-of-town highway work" to describe highway assignments that required Plaintiffs to stay overnight away from their usual lodging near Alpine. *See, e.g.,* Tr. I at 66:20–67:3, 189:5–8; Tr. II at 32:18–33:6. These projects included grass cutting work, *see* Tr. I at 66:20–67:3, safety installation work in Odessa, Texas, *see* Tr. II at 32:18–24, and maintenance work in El Paso, Texas, *see* Tr. I at 31:15–32:2, 189:5–8. Unlike local highway assignments, Plaintiffs working on out-of-town projects were not required to return to the Alpine yard to perform additional work after completing their highway work. *See id.* at 66:20–67:3; Tr. III at 28:22–29:8. Even so, Plaintiffs worked as many as 12 to 14 hours per day on these assignments. *See, e.g.,* Tr. I at 66:20–67:9; Tr. II at 32:18–34:4; Tr. III at 28:22–29:1.[2]

***2. General Findings Regarding Weekly Pay***

*a. Cash Payments*

Plaintiffs each received cash payments at some point during their employment. *See, e.g.,* Tr. I at 25:17–18 (Diaz Galvis); *id.* at 59:13–20 (García Rodriguez); *id.* at 89:2–6 (Tarazona

---

[2] The Court finds Plaintiffs' estimates of their out-of-town work hours consistent with the nature of the highway assignments and Mijelum's general work demands. Although Plaintiffs did not return to the Alpine yard for additional assignments while working out of town, the absence of yard work does not establish that they worked fewer hours overall. Rather, the evidence supports that the highway work itself could require extended workdays.

Carvajal); Tr. II at 11:15–18 (Gómez Pinto); *id.* at 40:21–24 (Herrera Pico); *id.* at 68:15–16 (Peña Castillo); Tr. III at 29:9–14 (Hurtado Garcia). As discussed above, no records establish the amounts of those cash payments. The Court therefore must assess Plaintiffs' testimony concerning the cash payments against the testimony of Leon and Luis Mucharraz. The Court finds Plaintiffs' testimony regarding the amounts they received in cash more credible than the Mucharrazzes' testimony.

*b. Paychecks*

In 2022, Mijelum issued paychecks in the names of the following Plaintiffs: (1) Tarazona Carvajal, Ex. 71; (2) Hurtado Garcia, Ex. 72; (3) Herrera Pico, Ex. 74; (4) Diaz Galvis, Ex. 76; and (5) Peña Castillo, Ex. 78. The checks were processed by an outside vendor who shipped them to Midland, Texas, to be picked up by Mijelum. *See* Tr. III at 122:3–16, 124:11–24. Luis or Leon would either pick up the checks and cash them, or have a worker pick up the check and have them exchanged for cash. Tr. I at 100:12–25; Tr. II at 68:15–23; *see* Tr. III at 125:3–11. Luis or Leon would pay each Plaintiff using the cash. *See* Tr. I at 100:12–23. Plaintiffs only rarely received a physical copy of the check that they could cash themselves. *See id.* at 35:25–36:5, 100:12–23; Tr. II at 68:17–23. Accordingly, the Court generally finds Plaintiffs' testimony regarding the payments received more credible than the testimony of Leon or Luis Mucharraz or the information shown on the checks.

***3. Plaintiff-Specific Findings***

*a. Tarazona Carvajal*

Tarazona Carvajal worked in the 2021 and 2022 seasons. *See* Tr. I at 78:22–23. Tarazona Carvajal's work during the 2021 season began on May 14, 2021 and ended on December 22, 2021. Ex. 106 at 39:14–17. In 2022, Tarazona Carvajal began working no later than the pay period of

May 8, 2022, *see* Ex. 71 at 23,[3] and he left his position on September 3, 2022, *see* Tr. I at 104:2–4.

i. Weekly Hours

During the 2021 season, Tarazona Carvajal alternated between various non-highway work assignments and local highway assignments, *see* Tr. I at 86:11–22, 90:6–91:2, 91:14–92:13. He worked no less than twelve hours each day, *see id.* at 106:2–4,[4] Monday through Saturday, *id.* at 89:19–22. He also worked two Sundays in 2021. *Id.*

In the 2022 season, Tarazona Carvajal was assigned to local highway, out-of-town highway, and non-highway projects. *See* Tr. I at 95:17–96:7, 96:11–17, 97:11–19. Tarazona Carvajal worked Monday through Saturday each week and two Sundays. *Id.* at 96:8–10, 101:6–8. He worked no less than 11.5 hours each day during the first week of the 2022 season. *See id.* at 94:25–95:5.[5] Tarazona Carvajal did not establish sufficient facts for the Court to determine the number of hours he worked each week during the remainder of his employment.

ii. Weekly Pay

---

3 Tarazona Carvajal testified that he began traveling to the United States for to work on April 4, 2022, and that "several days after, or weeks" he began working on concrete flooring in the Mijelum office. *See* Tr. I at 93:25–94:1, 94:17–20. He did not, however, identify the specific date in which he first performed work in 2022. The earliest period reflected in his 2022 paychecks is May 8, 2022. *See* Ex. 71 at 23. Absent further testimony establishing he actually began working on April 4, 2022 or some other earlier start date, the Court finds only that Tarazona Carvajal's employment in the 2022 season began no later than the pay period of May 8, 2022.

4 Tarazona Carvajal's testimony supports the finding that he generally worked no less than 12 hours, see *id.* at 106:2–4, but when working at the yard, he worked no less than 13.5 hours, *see* Tr. I at 87:1–5. He did not, however, identify the number of days or weeks in which he did yard work. Plaintiff therefore did not provide sufficient facts from which the Court can reasonably incorporate those yard-work dates into its ultimate findings regarding weekly hours worked.

5 Tarazona Carvajal testified that, during an early period in 2022, he sometimes began work as late as 8:30 a.m. and finished at 8:30 p.m. *See* Tr. I at 94:25–95:5. Because he did not specify how long that period lasted, the Court finds that Plaintiff has established only that he worked no less than 11.5 hours for no less than his first week.

In 2021, Tarazona Carvajal's regular rate of pay was at least $18.92 per hour. *See* Tr. III at 70:11–18. Tarazona was paid (1) $500.00 for the first week of work in 2021, *see* Tr. I at 89:5–6;[6] (2) $380.25 for pay period beginning July 10, 2021; (2) $780.00 per week for the pay periods beginning May 15, May 22, May 29, June 12, June 26, July 24, August 28, September 4, and September 11, 2022; and (3) $741.00 per week for the weeks of July 31, August 7, August 14, and August 21, 2022, *see* Ex. 71.[7]

Tarazona Carvajal's regular rate of pay was $19.50 per hour in 2022. *See* Ex. 71. In 2022, Tarazona Carvajal was generally paid $600.00 per week, *see* Tr. 107:20–21, but was paid $700 for three weeks, *see* Tr. II at 45:22–46:15.

Plaintiff did not establish he was paid less than $7.25 an hour in any week.

*b. Hurtado Garcia*

Hurtado Garcia worked for Mijelum from May 12 to September 10, 2022. Tr. III at 24:23–25.

i. Weekly Hours

During his first two weeks – from May 12 to 25, 2022 – Plaintiff worked on out-of-town highway work in Odessa. *See* Tr. II at 27:19–28:23. In those two weeks, he worked no less than twelve hours per day, *see id.* at 28:24–29:1, seven days a week, *see id.* at 33:2–5. Thereafter,

---

[6] Tarazona Carvajal testifies only that he was paid $500 per week "at the beginning" of his first year but does not clarify the number of weeks in which he received this lower amount. Tr. I at 89:5–6. The Court thus finds he has established only that he was paid $500.00 for first week of his employment in 2021.

[7] As for the remaining weeks, when asked whether he was paid "more than $600 for any week in 2021," Plaintiff replied by stating: "We always received the same amount. They never gave us more than what they gave us in 2021, same as in 2022." Tr. I at 108:11–15. Because that response does not clearly identify the amount he received or directly answer the question posed, the Court will not infer its meaning. There is also testimony in which Tarazona Carvajal reads from a statement that was not admitted into evidence and indicated that he received $600 for an unidentified period of time. *Id.* at 105:6–9. Without further context, the Court cannot determine which weeks his testimony was intended to address. Thus, without additional evidence concerning the amount he was paid each week, Tarazona Carvajal has established only that he was paid, at most, the weekly amounts listed in his 2022 pay checks.

Plaintiff worked on non-highway work for approximately one month. *See id.* at 30:9–17. He worked at minimum twelve hours per day, *see id.* at 30:25–31:2, six days per week, *see id.* at 33:6–8. In the remaining weeks, Hurtado Garcia worked on non-highway and local highway assignments, *see id.* 31:19–32:1, 34:19–21, for no less than twelve hours per day, *see id.* at 32:21–24, and no less than six days per week, *see id.* at 32:25–33:1.

ii. Weekly Pay

In 2022, Hurtado Garcia's regular rate was $18.92 per hour. *See* Ex. 72. Throughout his employment with Mijelum, he was paid $600.00 per week. Tr. III 35:24–36:5.

In the weeks of May 12 to 25, 2022, Hurtado Garcia was paid at most $7.14 per hour. In all other weeks, he was paid no less than $7.25 per hour in wages.

*c. Gómez Pinto*

Gómez Pinto worked for Mijelum from May 12 to September 3, 2022. *See* Tr. II at 5:7–9, 5:13–15.

i. Weekly Hours

Gómez Pinto's first assignment was in Odessa, *see* Tr. II at 9:11–10:1, where he worked for at least two weeks, *see id.* at 10:7–8. While in Odessa, Gómez Pinto worked approximately eighty hours per week for every full week worked, *see id.* at 18:12–16, or at least thirteen hours per day, six days per week, *see also id.* at 10:19–11:1. After working in Odessa, he worked on various local highway and non-highway assignments, *see id.* at 11:21–12:23, 13:15–14:2, for about eighty hours each week, *see id.* at 18:12–16.[8] In his last two months of work, Gómez Pinto worked

[8] Although Gómez Pinto testified that he estimated he worked approximately 80 hours per week during this period, Tr. II at 18:12–16, and from 6:00 a.m. to at earliest 7:00 p.m., *see id.* at 16:6–9, he did not state the hours he worked each day or the days he worked each week. Even still, the Court finds the weekly estimate credible, particularly because his colleagues working on similar projects during this time period testified they worked 6-7 days

in El Paso, *see id.* at 15:24–25, 16:16–18, for around eighty hours per week, *see id.* at 18:12–16; *see also id.* at 16:6–9.[9]

ii. Weekly Pay

In 2022, Gómez Pinto had a regular rate of $18.92 per hour. *See* Tr. III at 70:11–18. He was not paid for his first or last week and was paid $600.00 for all other weeks. *See* Tr. II at 17:22–18:9. In each week, he was paid at least $7.25 per hour.

*d. Herrera Pico*

Herrera Pico worked for Mijelum in 2021 and 2022. Tr. II at 25:12–13. In 2021, Herrera Pico worked from May 23, 2021 to December 21, 2021. *Id.* at 43:5–6. In 2022, Herrera Pico began working April 4, 2022, *see id.* at 39:2–3, and left his position on September 10, 2022, *see id.* at 51:11–16.

i. Weekly Hours

In 2021, Herrera Pico worked on non-highway, *see* Tr. I at 30:12–24, local highway, *see id.* at 30:18–31:9, and out-of-town highway projects, *see id.* at 32:18–33:4. He worked at least sixty hours per week during full weeks falling between May 23, 2021 and September 5, 2021, and 75 hours per week during full weeks falling between September 6, 2021 and December 21, 2021. *See id.* at 31:16–20.[10]

---

per week, *see* Tr. I at 96:8–10, 101:1–8; Tr. III at 32:25–33:1, 33:6–8, and between 12–16 hours each day, Tr. I at 94:25–95:5; Tr. II at 45:22–46:4, 73:6–8; Tr. III at 30:25–31:2, 32:21–24.

[9] A conservative reading of Gómez Pinto's testimony supports an inference that he worked at minimum 13 hours each day while working in El Paso. *See* Tr. II at 16:6–9. However, while he estimated he worked approximately 80 hours per week, *id.* at 18:12–16, he did not state how many days he worked each week. Even still, because Plaintiffs' testimony overwhelmingly shows Mijelum employees were regularly required to work six or even seven days each week, *see supra* note 8, the Court finds the 80-hour estimate to be sufficiently credible.

[10] Herrera Pico offered multiple, and at times conflicting, estimates concerning the number of hours he worked each week. *See* Tr. II at 31:16–20, 44:22–45:2, 45:22–46:4. At his most conservative, Herrera Pico testified that, during the "first weeks" of his employment, he worked between 60 and 70 hours per week, and that his hours later increased to between 75 and 90 hours per week. *Id.* at 31:16–20. At his most generous, he testified that he worked at least six days per week and at least 14 hours per day throughout his employment— in other words, at least 84 hours per week. *See id.* at 45:22–46:4. The Court credits his more conservative estimate. However, because Plaintiff did not

In the 2022 season, Herrera Pico was assigned out-of-town highway and non-highway work. *See id.* at 39:23–40:7. He generally worked at least seventy hours per week. *See id.* at 45:22–46:4.

ii. Weekly Pay

In 2021, Herrera Pico had a regular rate of $18.92 per hour. *See* Tr. III at 70:11–18. He was paid $400.00 in his first week and no more than $600 for all remaining weeks. *See id.* at 43:11–12.

In 2022, Herrera Pico had a regular pay rate of $19.50 per hour. *See* Ex. 74. He was paid $400.00 in his first week of the 2022 season, Tr. II at 40:14–20, $700 for three weeks, *id.* at 45:22–46:15, and for all remaining he weeks he was paid no more than $600, *id.* at 45:20–21.

Herrera Pico was paid at most $6.67 per hour for 60 hours of work in the week of May 23, 2021, and $5.71 for 70 hours of work in the week of April 4, 2022. For all other weeks, he was paid at least $7.25 per hour.

*e. Diaz Galvis*

Diaz Galvis worked for Mijelum from approximately April 6, 2022, to September 10, 2022. *See* Tr. I at 22:24–25, 38:12–14.[11]

i. Weekly Hours

For approximately a month, Diaz Galvis was assigned non-highway work. *See* Tr. I at 23:1–3, 23:9–10, 26:12–15. In his first week, he worked at least twelve hours a day, *see id.* at 24:22–24, for three days, *see id.* at 42:17–18. In his second week, he worked four days, *see id.* at

identify with specificity when his weekly hours increased, the Court finds only that he worked at least 60 hours per week during the first half of the 2021 season and at least 75 hours per week during the second half.

[11] Although Diaz Galvis testifies he began working on April 5, 2022, Tr. I at 38:12–14, he also testifies he began working on a Wednesday, *see id.* at 22:24–25. The Court finds the latter testimony to be more credible. Accordingly, the Court finds Diaz Galvis began working on Wednesday, April 6, 2022.

42:24–43:1, for approximately twelve hours each day, *see id.* at 26:5–9. In his third and fourth week, he worked twelve hours per day for at least five days per week, *see id.* at 26:16–23.[12]

In his remaining weeks, Diaz Galvis continued his work in the yard, *see* Tr. I at 26:16–21, but also was assigned to various local and out-of-town highway projects, *see id.* at 27:11–20, 31:15–25, 34:8–11. During this time, he worked at least sixty hours each week. *See id.* at 45:21–46:1.[13]

ii. <u>Weekly Pay</u>

Diaz Galvis had a regular rate of $18.92 per hour. *See* Ex. 76. Diaz Galvis was paid $300.00 for his first week, Tr. I at 25:10–14, $400.00 for his second week, *id.* at 26:10–11, $500.00 for his third and fourth week, *id.* at 26:16–21. In all other weeks, he was paid no more than $550. *See* Tr. 44:6–21.[14] Throughout his employment, he was paid at least $7.25 per hour.

---

[12] Diaz Galvis testified that during his third and fourth week, he worked "Monday to Saturday or Monday to Sunday." Tr. I at 30:8–12. However, he later clarified that he could not "recall well" how many weekends he worked, but that there "several weekends in a row" in which he was required to work weekends. *Id.* at 45:13–17. Based on this testimony, the Court finds Diaz Galvis did not work every weekend. And, given the uncertainty and lack of specificity in his testimony, the Court finds Diaz Galvis has established only that he worked five days per week in his third and fourth week.

While Diaz Galvis first testified he began working on weekends in his first month, Tr. I at 26:24–27:1, he could not state the specific weekends he worked or recall the total number of weekends worked, *see id.* at 45:16–17. His testimony lacks credibility and Plaintiff failed to establish a reasonable basis from which the Court could determine how, if at all, those weekend hours should be incorporated into his weekly-hour estimates.

[13] Diaz Galvis testified that during his employment, he worked "no less than eight hours at any point" and "several times" required him to work "12 hours or more." Tr. I at 45:2–5. However, he also testified that he worked several weekends on Luis Mucharraz's property, and that during those weekends, he worked from 7:00 a.m. to 8:00 p.m. *Id.* at 27:5–7.

Because Diaz Galvis's testimony concerning his daily hours and days worked varied, the Court cannot reasonably infer a consistent number of hours worked per day or days worked per week. Nevertheless, given that other Plaintiffs were similarly required to work sixty or more hours each week, *see supra* Section III(C), the Court credits his testimony that he worked at least sixty hours per week. *See* Tr. I at 45:21–46:1. Given the lack of specificity in the remaining evidence, however, the Court finds that Diaz Galvis has established only that he worked sixty hours per week.

[14] Diaz Galvis initially testified that he could not recall how long he was paid $500.00 – as opposed to $550.00 – in the remaining weeks. Tr. I at 44:6–21. However, he later testified he received $550.00 only two times. *Id.* at 44:22–23. Given Plaintiff's admittedly limited recollection of the relevant payment details, the Court finds that his later testimony does not credibly establish the precise number of weeks in which he received each amount. Plaintiff therefore established only that he never was paid more than $550 during the remaining weeks.

*f. Peña Castillo*

Peña Castillo worked for Mijelum in 2021 and 2022. *See* Ex. 78.

i. Weekly Hours

During trial, Peña Castillo did not provide testimony sufficient to establish a reliable general estimate of the number of hours he worked each week.[15] He did not provide the Court with a general estimate concerning his weekly hours. And, to the extent the Court could estimate Peña Castillo's weekly hours based of testimony regarding his daily hours and days worked per week, his testimony likewise lacks the specificity necessary to support a reliable estimate.

In identifying the number of days he worked each week, Peña Castillo testified only that he worked six days "some weeks" and seven days "some weeks." *See* Tr. II at 67:25–68:5. While this testimony supports an inference that he worked six or seven days during the weeks he described, it does not rule out that there could be weeks in which he worked fewer than six days. Therefore, a categorical finding that he worked at least six days every week would extend beyond his express testimony.

As for his testimony concerning his daily hours, the information provided is likewise insufficient. Peña Castillo did not provide a general estimate of the number of hours he worked in a typical week during his employment. While Peña Castillo testifies that he worked on Mucharraz's home in 2021, Tr. II at 67:17–24, assisted with grass work in 2021, *id.* at 69:18–21, and worked on bridges, *id.* at 73:24–74:1, he does not identify how many hours per day he worked for each project. Without additional evidence, the Court cannot estimate his daily hours for these assignments. And, even where Peña Castillo did account for the hours he worked each day on

[15] Although counsel elicited testimony concerning various numerical calculations during his deposition, these calculations lacked context and did not establish that Peña Castillo actually worked the assumed hours in a particular or typical week. *See* Tr. II at 70:5–24.

other assignments – such as yard work, *id.* at 67:4–13, cable work, *id.* at 69:13–16, and cement work, *id.* at 73:6–8 – he did not state how many days or weeks he worked on these projects. Peña Castillo therefore has not established the extent to which those daily estimates should inform the Court's hours calculations.

ii. Weekly Pay

In 2021, Peña Castillo was to be paid a regular rate of $18.53 per hour, and $20.00 per hour in 2022. *See* Ex. 78. As with his testimony regarding hours worked, Peña Castillo did not testify to the amount he received in each individual week. Accordingly, Peña Castillo has established only that he received the amounts reflected on the checks.

*g. García Rodriguez*

García Rodriguez began working no later than May 30, 2021, *see* Tr. I at 55:1–5,[16] and stopped working no earlier than December 15, 2021, *see id.* at 74:24–25.[17]

i. Weekly Hours

In his first three weeks, he worked exclusively on non-highway assignments. Tr. I at 60:22–61:2. In those first three weeks, he worked six days a week, *see id.* at 59:6–7, 61:3–5, for approximately 15 hours per day, *see id.* at 59:3–5, 60:6–8, 61:3–5.

In June through December of 2021, García Rodriguez worked on local road closures, *see* Tr. I at 61:6–19, and out-of-town highway assignments, *see id.* at 65:11–19, 66:16–67:3, 68:3–18. While doing this work, he worked at least 80 hours per week. *See id.* at 75:11–13.[18]

---

16 García Rodriguez testified that he began working for Mijelum "mid-month" after May 15, 2021, but did not identify a precise start date. *See* Tr. I at 55:1–5. García Rodriguez thus established only that he was employed by Mijelum by May 30, 2021.

17 García Rodriguez states only that he worked until "the end of December of '21." Tr. I at 74:24–25. Based on this testimony, the Court finds that García Rodriguez has established he worked through and including Wednesday, December 15, 2021.

18 García Rodriguez testified that he worked between 14 and 15 hours each day from June through December, *see id.* at 61:20–22, 67:6–16, 69:1–3; *see also id. at* 59:3–5, 60:6–8, 61:3–5, but did not identify the number of days

ii. Weekly Pay

In 2021, García Rodriguez was to be paid a regular rate of $18.92 per hour. *See* Tr. III at 70:11–18. Plaintiff was paid $300.00 one week, *see* Tr. I at 70:9–24, $600.00 for three weeks, *id.* at 70:23–24, and $500.00 for all remaining weeks, *see id.* at 76:21–23; *see also* 59:13–15, 65:1–3, 70:3–8. Throughout his employment, he was paid at least $7.25 per hour.

**D. Willfulness**

"[W]illfulness occurs where the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). An employer can be said to have acted willfully where it "kn[e]w [its] pay structures violate[d] the FLSA or ignore[d] complaints brought to their attention." *Id.* (citing *Ikossi–Anastasiou v. Bd. Of Supervisors of La. State Univ.,* 579 F.3d 546, 553 & n. 24 (5th Cir.2009)).

Here, Leon and Luis Mucharraz – and, by extension, Mijelum – knew of the applicable overtime laws. *See* Tr. I at 153:23–154:3; Tr. III at 86:21–87:4.

Further, Leon and Luis Mucharraz gave Plaintiffs their assignment, directed them when to report to work, and determined each employee's work hours. *See* Tr. III at 55:13–16, 56:20–23. Plaintiffs did not work any hours of which Luis and Leon Mucharraz were unaware.

Finally, Leon and Luis Mucharraz determined the amount employees would be paid each week. Tr. III at 55:25–56:2, 56:20–23. When Plaintiffs were not issued a paychecks, Leon and Luis Mucharraz withdrew the funds and made the payments in cash. *See id.* at 49:5–8. When the

---

he worked each week. Given that Tarazona Carvajal testified that he worked at least six days each week during the same time period, *see* Tr. I at 89:19–22, the Court finds that García Rodriguez's estimate that he worked 80 to 90 hours in all workweeks is credible. However, in considering this estimate, the Court will not infer that the larger of the two numbers is regularly applicable and will thus use the 80-hour workweek in its calculations.

employees were paid by check, Luis entered employees' hours into the payroll software to generate paychecks. Tr. III at 143:4–15.

In sum, Mijelum knew the applicable law, knew the hours Plaintiffs worked, and knew what it paid Plaintiffs. Thus, Mijelum knew that Plaintiffs' compensation fell short of the amount required by law. Accordingly, the Court finds the violation was willful.

## IV. CONCLUSIONS OF LAW

The following section constitutes the Court's conclusions of law.[19]

### A. Jurisdiction

The Court concludes that it has subject matter jurisdiction over this action, as Plaintiffs' FLSA claims arise under laws of the United States, *see* 28 U.S.C. § 1331; 29 U.S.C. § 216(b), and both parties consented to jurisdiction of the United States Magistrate Judge under 28 U.S.C. § 636(c), *see* Notice, Consent, & Ref. Civil Action Mag. J., ECF No.7; Order Transferring Case to Mag. J., ECF No. 8. The Court also concludes it has has personal jurisdiction over the parties to this action.

### B. FLSA Coverage

"The FLSA guarantees overtime pay to employees . . . 'employed in an enterprise engaged in commerce,'" unless an exception or exemption applies. *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (quoting 29 U.S.C. § 207(a)(1)).

Under the FLSA, "the term 'employee' means any individual employed by an employer." *See* 29 U.S.C. § 203I. "To determine whether an individual or entity is an employer, the court considers whether the alleged employer: '(1) possessed the power to hire and fire the employees,

[19] All conclusions of law that are more properly considered to be findings of fact are also adopted by the Court as findings of fact.

(2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) (citing *Williams v. Henagan,* 595 F.3d 610, 620 (5th Cir. 2010)). In light of this Court's findings, *see supra* Section III(A), the Court concludes that at all relevant times, Plaintiffs were employed by Mijelum within the meaning of the FLSA.

An employer is an "enterprise engaged in commerce" where it: (i) has employees "engaged in commerce"; and (ii) is an enterprise whose annual gross volume of sales made or business done was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated). 29 U.S.C. § 203(s)(1)(A). Based on its findings, *see supra* Section III(A), both prongs of this analysis have been met. Thus, the Court concludes that at all relevant times, Plaintiffs were "employed in an enterprise engaged in commerce."

The Court further concludes that no exceptions or exemptions are applicable.

Thus, the Court concludes Plaintiffs claims are covered by the FLSA.

**C. Statute of Limitations**

"The issue of whether an employer's violation of the FLSA was willful determines the statute of limitations that applies to the violation." *Clark v. Centene Co. of Tex., L.P.*, 104 F. Supp. 3d 813, 825 (W.D. Tex. 2015) (citing 29 U.S.C. § 255(a)). Where a violation is not willful, the court will apply a two-year limitations period. § 255(a). However, if the violation is willful, the limitations period is extended and a three-year period applies. *Id.*

Because Mijelum's violation of the FLSA was found to be willful, *see supra* Section III(D), the Court concludes that a three-year statute of limitations applies. Plaintiffs may seek damages from June 27, 2020 – three years before the complaint was filed in this action.

**D. Plaintiffs' Overtime Claims**

Because the Court finds the records are inadequate and inaccurate, *see supra* Section III(B), the Court concludes the *Mt. Clemens* burden-shifting applies. The Court therefore applies the framework to each Plaintiff's claim in turn.

***1. Tarazona Carvajal***

Tarazona Carvajal claims unpaid wages from May 13, 2021 to December 21, 2021, and April 4, 2022, to September 23, 2022. Am. Compl. 6.

*a. Tarazona Carvajal's Burden*

Based on its findings, *see supra* Section III(C)(3)(a), the Court concludes it may reasonably infer that:

- in the week of May 9, 2021, Tarazona Carvajal worked less than 40 hours;
- in the week of May 16, 2021, up to and including the week of December 12, 2021, Tarazona Carvajal worked at least 72 hours each week;
- in the week of December 19, 2021, Tarazona Carvajal worked less than 40 hours;
- in week of May 8, 2022, Tarazona Carvajal worked at least 69 hours.[20]

Tarazona Carvajal thus sufficiently demonstrated that, in the week of May 8, 2022, he worked 29 hours in overtime and was not compensated for that time.

Accordingly, Tarazona Carvajal has met his initial burden to produce sufficient evidence to support an inference that Mijelum failed to pay him $848.25 in unpaid wages.

As to the remaining claims, the Court concludes Tarazona Carvajal did not meet his burden. First, Tarazona Carvajal did not establish he was paid less than minimum wage in any week. As to his remaining overtime claims, Tarazona Carvajal failed to establish he worked any overtime

[20] Although the Court finds that Tarazona Carvajal worked two Sundays in 2021 and two Sundays in 2022, he did not provide sufficient information for the Court to determine the weeks in which those Sundays occurred. Because he has not established that he worked more than 40 hours in any particular workweek, the Court cannot reasonably incorporate those Sunday hours into its overtime calculations.

hours in the week of May 9, 2021. As to the remaining weeks, he failed to establish sufficient facts to allow the Court to reasonably infer he was improperly compensated.

*b. Mijelum's Burden*

Mijelum did not meet its burden to come forward with credible evidence of the precise amount of work performed or which would otherwise negate the reasonableness of the Court's inferences above.

*c. Award*

The Court thus concludes Tarazona Carvajal shall be awarded a total of a total of **$848.25** in unpaid wages. As to all remaining claims, the Court concludes Tarazona Carvajal did not meet its burden to prove he was entitled to recover additional unpaid wages under the FLSA.

***2. Hurtado Garcia***

Hurtado Garcia claims unpaid wages from May 12, 2022 to September 23, 2022. *See* Am. Compl. 6–7.

*a. Hurtado Garcia's Burden*

Based on its findings, *see supra* Section III(C)(3)(b), the Court concludes it may reasonably infer that:

- in the week of May 8, 2022, Hurtado Garcia worked less than 40 hours;
- in the weeks of May 15, 2022 and May 22, 2022, Hurtado Garcia worked at least 84 hours and was paid at most $7.14 per hour;[21] and
- in the week of May 29, 2022, up to and including the week of September 4, 2022, Hurtado Garcia worked at least 72 hours each week.

Hurtado Garcia thus sufficiently demonstrated that:

---

[21] Because his Odessa assignment ended on May 25, 2022, the Court finds Hurtado Garcia's testimony supports a reasonable inference that he worked seven days during the week of May 22. *See id.* at 33:2–5. Absent additional evidence supporting a seven-day schedule in later weeks, however, the Court will apply the more conservative estimate of six workdays per week for the remaining weeks where he was assigned non-highway work.

- in the weeks of May 15, 2022 to May 22, 2022, he was paid $0.11 less than the minimum wage for each hour worked;
- worked 44 hours of overtime in both May 15, 2022 and May 22, 2022, and was not properly compensated for that time;
- worked 32 hours of overtime in the week of May 29, 2022, up to and including the week of September 4, 2022, and was not properly compensated for that time.

Accordingly, Hurtado Garcia has met his initial burden to produce sufficient evidence to support an inference that Mijelum failed to pay him:

- a combined total of $18.48 unpaid minimum wages for 2022;
- a combined total of $2,497.44 in unpaid overtime from the week of May 15, 2022 up to and including the week of May 22, 2022; and
- a combined total of $13,622.40 in unpaid overtime from the week of May 29, 2022, up to and including the week of September 4, 2022.

As to the remaining weeks, Hurtado Garcia failed to establish sufficient facts to allow the Court to reasonably infer he was improperly compensated.

*b. Mijelum's Burden*

Mijelum did not meet its burden to come forward with credible evidence of the precise amount of work performed or which would otherwise negate the reasonableness of the Court's inferences above.

*c. Award*

The Court thus concludes Hurtado Garcia shall be awarded a total of a total of **$16,138.32** in unpaid wages. As to all remaining claims, the Court concludes Hurtado Garcia did not meet its burden to prove he was entitled to recover additional unpaid wages under the FLSA.

***3. Gómez Pinto***

Gómez Pinto claims unpaid wages from May 12, 2022 to September 23, 2022. Am. Compl. 7.

*a. Gómez Pinto's Burden*

Based on its findings, *see supra* Section III(C)(3)(c), the Court concludes it may reasonably infer that:

- in the week of May 8, 2022, Gómez Pinto worked at least 26 hours and was not paid for his work; and
- in the week of May 15, 2022, up to and including the week of August 28, 2022, Gómez Pinto worked at least 80 hours.

Gómez Pinto thus sufficiently demonstrated that:

- in the week of May 8, 2022, he was paid less than the minimum wage for every hour worked; and
- he worked 40 hours of overtime in the week of May 15, 2022, up to and including the week of August 28, 2022, and was not properly compensated for that time.

Accordingly, Gómez Pinto has met his initial burden to produce sufficient evidence to support an inference that Mijelum failed to pay him:

- a combined total of $188.50 unpaid minimum wages; and
- a combined total of $17,028.00 in unpaid overtime from the week of May 15, 2022, up to and including the week of August 28, 2022.

As to the remaining weeks, Gómez Pinto failed to establish sufficient facts to allow the Court to reasonably infer he was improperly compensated.

*b. Mijelum's Burden*

Mijelum did not meet its burden to come forward with credible evidence of the precise amount of work performed or which would otherwise negate the reasonableness of the Court's inferences above.

*c. Award*

The Court thus concludes Gómez Pinto shall be awarded a total of a total of **$17,216.50** in unpaid wages. As to all remaining claims, the Court concludes Gómez Pinto did not meet its burden to prove he was entitled to recover additional unpaid wages under the FLSA.

### 4. *Herrera Pico*

Herrera Pico claims unpaid wages from July 11, 2021 to December 21, 2021, and April 4, 2022, to September 23, 2022. Am. Compl. 7.

*a. Herrera Pico's Burden*

Based on its findings, *see supra* Section III(C)(3)(d), the Court concludes it may reasonably infer that:

- he was at most $5.71 for 70 hours of work in the week of April 4, 2022;
- in the week of July 11, 2021, up to and including the week of August 29, 2021, Herrera Pico worked at least 60 hours each week;
- in the week of September 5, 2021, up to and including the week of December 12, 2021, Herrera Pico worked at least 75 hours each week;
- in the week of December 19, 2021, Herrera Pico worked less than 40 hours; and
- in the week of April 3, 2022, up to and including the week of September 4, 2022, Herrera Pico worked for at least 70 hours each week.

Herrera Pico thus sufficiently demonstrated that:

- in the week of April 4, 2022, he was paid $1.54 less than the minimum wage for each hour worked;
- he worked 20 hours of overtime in the week of July 11, 2021, up to and including the week of August 29, 2021, and was not properly compensated for that time;
- he worked 35 hours of overtime in the week of September 5, 2021, up to and including the week of December 12, 2021, and was not properly compensated for that time; and
- he worked 30 hours of overtime in the week of April 3, 2022, up to and including the week of September 4, 2022, and was not properly compensated for that time.

As to the remaining weeks, Herrera Pico failed to establish sufficient facts to allow the Court to reasonably infer he was improperly compensated.

Accordingly, Herrera Pico has met his initial burden to produce sufficient evidence to support an inference that Mijelum failed to pay him:

- a combined total of $107.80 unpaid minimum wages; and
- a combined total of $4,540.80 in unpaid overtime from the week of July 11, 2021, up to and including the week of August 29, 2021;
- a combined total of $14,899.50 in unpaid overtime from the week of September 5, 2021, up to and including the week of December 12, 2021;

- a combined total of $20,182.50 in unpaid overtime from the week of April 3, 2022, up to and including the week of September 4, 2022.

*b. Mijelum's Burden*

Mijelum did not meet its burden to come forward with credible evidence of the precise amount of work performed or which would otherwise negate the reasonableness of the Court's inferences above.

*c. Award*

The Court thus concludes Herrera Pico shall be awarded a total of a total of **$39,730.60** in unpaid wages. As to all remaining claims, the Court concludes Herrera Pico did not meet its burden to prove he was entitled to recover additional unpaid wages under the FLSA.

***5. Diaz Galvis***

Diaz Galvis claims unpaid wages from April 4, 2022, to September 23, 2022.

*a. Diaz Galvis's Burden*

Based on its findings, *see supra* Section III(C)(3)(e), the Court concludes it may reasonably infer that:

- in the week of April 3, 2022, Diaz Galvis worked less than 40 hours;
- in the week of April 10, 2022, he worked at least 48 hours;
- from the week of April 17, 2022, up to and including the week of September 4, 2022, Diaz worked at least of 60 hours each week.

Diaz Galvis thus sufficiently demonstrated that:

- he worked 8 hours of overtime in the week of April 10, 2022, and was not properly compensated for that time;
- he worked 20 hours of overtime in the week of April 17, 2022, up to and including the week of September 4, 2022, and was not properly compensated for that time;

As to the remaining weeks, Diaz Galvis failed to establish sufficient facts to allow the Court to reasonably infer he was improperly compensated.

Accordingly, Diaz Galvis has met his initial burden to produce sufficient evidence to support an inference that Mijelum failed to pay him:

- a combined total of $227.04 in unpaid overtime from the week of April 10, 2022; and
- a combined total of $11,919.60 in unpaid overtime from the week of April 17, 2022, up to and including the week of September 4, 2022.

*b. Mijelum's Burden*

Mijelum did not meet its burden to come forward with credible evidence of the precise amount of work performed or which would otherwise negate the reasonableness of the Court's inferences above.

*c. Award*

The Court thus concludes Diaz Galvis shall be awarded a total of a total of **$12,146.64** in unpaid wages. As to all remaining claims, the Court concludes Diaz Galvis did not meet its burden to prove he was entitled to recover additional unpaid wages under the FLSA.

***6. Peña Castillo***

Peña Castillo claims unpaid wages from July 11, 2021 to December 21, 2021, and April 4, 2022, to September 23, 2022. Am. Compl. 8–9.

Based on its findings, *see supra* Section III(C)(3)(f), the Court concludes Peña Castillo did not present sufficient evidence to support a just and reasonable inference as to the amount and extent of the work he performed for Mijelum during his employment.

The Court thus concludes Peña Castillo did not meet his burden and is thus did not meet its burden to prove he was entitled to recover damages under the FLSA.

***7. García Rodriguez***

García Rodriguez claims unpaid wages from May 13, 2021 to December 21, 2021. Am. Compl. 9.

*a. García Rodriguez's Burden*

Based on its findings, *see supra* Section III(C)(3)(g), the Court concludes it may reasonably infer that:

- in the weeks of May 30, 2021, up to and including the week of June 13, 2021, García Rodriguez worked at least 90 hours per week;
- in the weeks of June 20, 2021, up to and including the week of December 5, 2021, García Rodriguez worked at least 80 hours per week;
- in the week of December 12, 2021, he worked at least 35 hours.[22]

García Rodriguez thus sufficiently demonstrated that:

- he worked 50 hours of overtime per week in the weeks of May 30, 2021, up to and including the week of June 13, 2021, and was not properly compensated for that time; and
- he worked 40 hours of overtime per week in the weeks of June 20, 2021, up to and including the week of December 5, 2021, and was not properly compensated for that time.

As to the remaining weeks, García Rodriguez failed to establish sufficient facts to allow the Court to reasonably infer he was improperly compensated.

Accordingly, García Rodriguez has met his initial burden to produce sufficient evidence to support an inference that Mijelum failed to pay him:

- a combined total of $4,257.00 in unpaid overtime from the weeks of May 30, 2021, up to and including the week of June 13, 2021; and
- a combined total of $28,380.00 in unpaid overtime from the week of June 20, 2021, up to and including the week of December 5, 2021.

*b. Mijelum's Burden*

Mijelum did not meet its burden to come forward with credible evidence of the precise amount of work performed or which would otherwise negate the reasonableness of the Court's inferences above.

---

[22] Although the Court found that García Rodriguez was at times paid $300 and $500, *see supra* Section III(C)(3)(g), it cannot determine the dates on which he worked well enough to draw a reasonable inference from those amounts. Accordingly, the Court may infer only that his weekly pay did not exceed $600.

*c. Award*

The Court thus concludes García Rodriguez shall be awarded a total of a total of **$32,637.00** in unpaid wages. As to all remaining claims, the Court concludes García Rodriguez did not meet its burden to prove he was entitled to recover additional unpaid wages under the FLSA.

**E. Liquidated Damages**

"Under the FLSA, an employer who violates the overtime provisions is liable not only for the unpaid overtime [or minimum wage] compensation, but also for 'an additional equal amount as liquidated damages.'" *Singer v. City of Waco*, 324 F.3d 813, 822 (5th Cir. 2003) (quoting 29 U.S.C. § 216(b)). A court may reduce or decline to award such damages only if it "concludes that the employer acted in 'good faith' and had 'reasonable grounds' to believe that its actions complied with the FLSA." *Id.* at 822–23 (5th Cir. 2003) (citing 29 U.S.C. § 260). A finding of willfulness precludes a conclusion that a defendant acted in good faith. *See id.* at 823.

Accordingly, because the Court found that defendants acted willfully, it concludes Plaintiffs Tarazona Carvajal, Hurtado Garcia, Gómez Pinto, Herrera Pico, Diaz Galvis, and García Rodriguez are entitled to liquidated damages equal to the amount of unpaid wages.

**F. Attorneys' Fees and Costs**

The Court concludes Plaintiffs Tarazona Carvajal, Hurtado Garcia, Gómez Pinto, Herrera Pico, Diaz Galvis, and García Rodriguez are entitled to recover reasonable attorneys' fees and costs from Mijelum. 29 U.S.C § 216(b).

**G. Pre and Post Judgment Interest**

The Court concludes Plaintiffs are not entitled to pre-judgment interest. *See Champion v. Phaselink Util. Sols., LLC*, No. SA-22-CV-00145-JKP, 2022 WL 3693461, at *10 (W.D. Tex. Aug. 24, 2022) (citing 29 U.S.C. § 216; *Knowlton v. Greenwood Indep. Sch. Dist.*, 957 F.2d 1172, 1183

(5th Cir. 1992)) ("Pre-judgment interest is not available for FLSA claims, like this one, that seek compensation for unpaid overtime wages and liquidated damages."). However, the Court concludes Plaintiffs Tarazona Carvajal, Hurtado Garcia, Gómez Pinto, Herrera Pico, Diaz Galvis, and García Rodriguez are "entitled to awards of post-judgment interest at the Court's published rate for the week prior to the date of judgment until the date paid." *See id.* (citing § 1961(b); *Melendez v. DJJRN, Inc.*, No. 3:20-CV-102, 2020 WL 7774940, at *5–6 (N.D. Tex. Nov. 16, 2020), *R. & R. adopted,* 2020 WL 7771203 (N.D. Tex. Dec. 30, 2020)).

## V. CONCLUSION

For the foregoing reasons, the Court concludes Plaintiff Peña Castillo has not proven, by a preponderance of the evidence, that Mijelum violated the FLSA by failing to him proper minimum and/or overtime wages. Accordingly, he is not entitled to a damages award, attorneys' fees, court costs, expert fees, liquidated damages, and pre and post judgment interest.

The Court further concludes that Plaintiffs Tarazona Carvajal, Hurtado Garcia, Gómez Pinto, Herrera Pico, Diaz Galvis, and García Rodriguez have proven, by a preponderance of the evidence, that Mijelum violated the FLSA by failing to them proper minimum and/or overtime wages. Accordingly, the Court awards the following amounts as the total compensatory and liquidated damages:

- Tarazona Carvajal: $**1,696.50**
- Hurtado Garcia: **$32,276.64**
- Gómez Pinto: **$34,433.00**
- Herrera Pico: **$79,461.20**
- Diaz Galvis: **$24,293.28**
- García Rodriguez: **$65,274.00**

Plaintiffs Tarazona Carvajal, Hurtado Garcia, Gómez Pinto, Herrera Pico, Diaz Galvis, and García Rodriguez are also awarded attorneys' fees, court costs, expert fees, and post-judgment interest.

Plaintiffs Tarazona Carvajal, Hurtado Garcia, Gómez Pinto, Herrera Pico, Diaz Galvis, and García Rodriguez shall submit such an application for reasonable attorneys' fees and court costs by September 4, 2026, and defendants shall submit any opposition by September 11, 2026.

**SIGNED** this 24th day of August, 2026.

**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**